IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Jeffrey K. Bartels Del. ID # 2249
Kenneth William Richmond *pro hac vice*   Attorneys for Plaintiffs
401 South Maryland Avenue
Wilmington, DE 19804
302-995-6211

| | |
|---|---|
| Estate of Louis W. Chance, Jr. by: Amanda Humphreys and Louis Chance, III, Personal Representatives<br>506 W. Summit Avenue<br>Wilmington, Delaware 19804<br><br>   Plaintiff<br><br>   v<br><br>First Correctional Medical-Delaware, LLC.<br>P. O. Box 69370<br>Tucson, Arizona 85737-0015<br><br>   Defendant<br>  and<br><br>Dr. Niranjana Shah, MD<br>6 Cumberland Drive<br>Voorhees, NJ 08043-1652<br><br>   Defendant<br>  and<br><br>Dr. Jose A. Aramburo, Jr., MD<br>13427 Worthington Roadl<br>Philadelphia, PA 19116<br><br>   Defendant<br>  and | Civil Action No. 05-449 (SLR)<br><br>JURY TRIAL DEMANDED |

| |
|---|
| Commissioner Stanley Taylor<br>Delaware Department of Corrections<br>Administration Building<br>245 McKee Road<br>Dover, Delaware 19904<br><br>    Defendant<br><br><br>    and<br><br>Joyce Talley, Bureau Chief of<br>Management Services<br>Delaware Department of Corrections<br>Administration Building<br>245 McKee Road<br>Dover, Delaware 19904<br><br>    Defendant |

### AMENDED COMPLAINT

### FEDERAL CLAIM

## I. JURISDICTION

1. 28 U.S.C.S. 1331 Federal Question: This is a civil action brought pursuant to 42 U.S.C.S. 1983 alleging that each of the defendants named above, while acting under color of state law, in the manner described below, violated the decedent's right under U.S. Const. amend. VIII, to be free of the infliction of cruel and unusual punishment or death by the intentional denial of medical treatment.

## II. PARTIES

2. Plaintiffs Amanda Humphreys and Louis Chance, III are the mother and son of decedent who have been appointed administrators of the Estate of Louis W. Chance, Jr., by the Register of Wills of New Castle County, Delaware on June 20, 2005, at file No. 135644, and seek recovery under Del. Code Ann. tit. 10, sec. 37004 (b), and De. Code Ann. tit. 10, sec. 3701.

3. Defendant First Correctional Medical-Delaware, LLC. advertises itself as being an expert in prison medical care with its principal offices at the address appearing in the caption. At all times relevant hereto, it was the contractor during all relevant periods herein for the only medical care available to inmates confined to the Delaware Correctional Facilities known as Webb and Gander Hill in Wilmington, Delaware by virtue of an agreement dated June 17, 2002 by and between Defendant Stan Taylor, Commissioner and First Correctional Medical Services.

4. Defendants Shaw and Aramburo, Jr., at all times relevant, were each Delaware licensed medical doctors who were either employees under the direction and control of First Correctional Medical, Inc., (hereafter "FCM"), or they were agents, ostensible agents, sub-contractors under agreement to or with FCM to provide medical care to inmates at Gander Hill and Webb.

5. Defendant Stanley Taylor is the Commissioner of Corrections

for the State of Delaware who, on or about June 17, 2002 entered into an Agreement Defendant First Correctional Medical-Delaware, LLC (hereafter referred to as "FCM") for the provision of comprehensive medical care for inmates incarcerated by the Delaware Department of Corrections.

6. Defendant Joyce Talleyis the Bureau Chief for the Bureau of Management Services, Delaware Department of Corrections, who was specifically charged with oversight of inmate health care services and ensuring the most effective and lowest cost delivery of medical services to incarcerated offenders.

### III THE FACTS

7. FCM had contracted with the Delaware Department of Corrections to provide Medicare Care to Inmates at the Gander Hill and Webb facilities, and was solely responsible for the staffing, policies, procedures, protocol, staff qualifications, staff training, and staff education required to meet the medical needs of inmates confined to Gander Hill or Webb during the period between April 1, 2003 and September 23, 2003.

8. As part of the contract, the Delaware Department of Corrections required FCM to minimize offsite transport of inmates for any health care

services, because offsite services were deemed expensive for the FCM and for the Department of Corrections that must incur security expenses.

9. The decedent, Louis W. Chance, Jr., an alcoholic, had pled guilty to a fourth DUI before the Honorable Jerome O. Herlihy of the Superior Court and was sentenced to six months on April 1, 2003.

10. Decedent was placed under the custody of the Delaware Department of Corrections, given number 169066 and was to be released, presumptively, on September 30, 2003.

11. On September 23, 2003, while still in the custody of the Delaware Department of Corrections, decedent expired of Cryptococcal meningitis following fifteen days of documented unrelenting and unrelieved headache accompanied by confusion, loss of hearing, diminished eyesight, agitation and teary pleas for relief.

12. Commencing on September 8, 2003, the decedent made a sick call request for a headache indicating that he had the problem for three days whereupon he was seen by Beverly Anderson, RN and given six Excedrin.

13. On September 9, 2003, the decedent reported no relief from his headache to an unidentifiable physician who prescribed Motrin.

14. On September 10, 2003, the decedent reported to nurse Beverly Anderson that, " he could not take it any longer." but he was not seen by a physician.

15. On September 11, 2003, the decedent reported to a physician that he unable to see, "…hardly at all, was dizzy, appeared ataxic, was agitated and rude and that he was in pain from migraine headache from last Thursday…" (a week ago).

16. On September 12, 2003, Lt. Marcello Ripoli of the Webb Custodial Staff observed the decedent's confusion and reported that decedent had possibly overdosed on medication whereupon he transferred decedent to the Gander Hill Infirmary in the late evening.

17. At the Gander Hill Infirmary, the decedent is reported saying, "what? what?" by FCM staff, and he was characterized as disoriented, hostile, non-co-operative and "unable to contract for his own safety" at which point, FCM nurses Green, Scott or James summoned the Quick Response Team consisting of

six armored custodial staff who subdued the decedent and completely immobilized him in preparation for the introduction of an IV.

18. A telephone order for the administration of intravenous Ativan, Benadryl and Haldol was obtained from Defendant Abramburo, Jr. without direct examination or the benefit of psychiatric evaluation or intervention.

19. On September 13, 2003, Kent Johnson, a FCM employee without medical or psychiatric training, evaluated the decedent, described him as being unable to process questions, without orientation times 3, with a hostile affect and in need for evaluation for medication and close monitoring.

20. On September 16, 2003, decedent was seen by Defendant Shah who recorded his continued complaints of headache for which he prescribed Tylenol and one cup of coffee per day.

21. On September 18, 2003, the decedent was returned to the Webb facility where the progress notes record his continued complaints of headache through September 22, 2003.

22. On September 23, 2003, the decedent was found unresponsive, transferred emergently to St. Francis Hospital where he was coded, but expired.

23. The cause of death was Cryptococcal meningitis, a commonly encountered, opportunistic, treatable infection causing swelling inside the cranial cavity.

24 Defendants Shah and Aramburo, Jr. made out-of-sequence entries in the decedent's progress chart purporting to "Urgently" schedule brain scans by CT or MRI dated September 22, 2003.

25. The out-of-sequence chart entries establish their subjective awareness that a brain scan in decedent's case was urgently required for a timely diagnosis, but was deliberately ignored earlier.

26. It is believed and therefore averred that the deliberate failure to schedule a timely MRI of the decedent was a direct result of the cost containment practices and policies of FCM and the Defendant Stanley Taylor.

27. It is believed and therefore averred that the general cost containment practices of FCM and Defendant Taylor caused inadequate medical staffing, inadequate training, and reliance upon the judgment of persons other than qualified physicians, and psychiatrists to make medical decisions, refusal to provide required transport to needed off site medical facilities for decedent Chance

all of which resulted in a policy of deliberate denial of access to the medical care decedent clearly required.

28. At all times relevant hereto, Defendant Joyce Talley, assumed a duty to insure efficient and effective delivery of health care to decedent Chance, and in spite of numerous inmate complaints, numerous inmate deaths due to "lengthy illnesses" and the identification of "medical issues" under the contract, Joyce Talley remained deliberately indifferent to the medical plight of inmates in general, and decedent Chance in particular by failing to order or require inmates to receive adequate, needed medical care when she had a duty to do so.

29. In addition to the foregoing, the specific failure to provide access to required diagnostic care in the case of the decedent resulted from a contractual agreement between Defendant Taylor and FCM and the failure to insure efficient and effective medical care under the contract created a policy of deliberate indifference to the decedent's medical plight in violation of the proscriptions contained in the United States Constitution, amend. VIII.

30. In addition to the foregoing, the actions and inactions of the FCM staff, Defendants Shah and Aramburo, Jr., with respect to the decedent, fell well below the accepted standard of care in correctional medical facilities. The failure to appropriately diagnose and treat the decedent's Cryptococcal meningitis

lead to his death, and constitute gross negligence under the circumstances and unconstitutional deliberate indifference to a serious medical need.

31. As a direct and proximate result of the actions and inactions of each of the defendants, jointly and severally as described above, the decedent was deprived of protections afforded under the United States Constitution, amend. VIII to be free of cruel and unusual punishment.

32. As a further result of the conduct as described above, decedent suffered intense pain, humiliation, immobilization, loss of sight, hearing, faculty, confusion, anxiety, frustration, and fear until losing consciousness and ultimately, his life, over a period of fifteen days.

33. As a further result of the conduct described above, the decedent suffered loss of earnings as a carpenter for the remainder of his life.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally together with punitive damages, as determined by the fact finder and assessment of costs and attorney fees.

PENDENTE STATE CLAIMS

34. Each of the foregoing allegations are incorporated herein as though fully set forth, and in addition thereto, Plaintiffs allege that although FCM had the right to control or overrule the authority of Defendant's Shah and Aramburo, Jr. to make referrals of inmate patients for diagnostic testing or studies or hospitalization, neither physician attempted to timely secure the required diagnostic procedures for the decedent under circumstances where they had a clear duty to do so.

35. The independent failure of Defendants Shah and Aramburo, Jr. to diagnose and treat the decedent's Cryptococcal meningitis lead to his death and constitutes gross negligence and deliberate indifference to a serious medical need or, in the alternative, and falls well below the due standard of care.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants Shah and Aramburo, Jr., jointly and severally for damages, and for punitive damages as a fact finder may determine, plus costs and attorney fees.

Respectfully submitted

/s/ *[signature]*
Jeffrey K. Bartels
Kenneth William Richmond, *pro hac vice*
401 South Maryland Ave.
Wilmington, DE 19804
302-995-6211

CERTIFICATION

Kenneth William Richmond, Counsel for the Plaintiff in the foregoing action certifies that he has investigated the facts underlying the allegations contained in the attached Complaint and that each of the allegations set forth are true and correct according to his best information and belief.

Dated September 15, 2005

/s/ *Kenneth William Richmond*
Kenneth William Richmond
2019 Walnut Street
Philadelphia, PA  19103
215-523-9200