## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ESTATE OF LOUIS W. CHANCE, JR., :
by Amanda Humphreys and Louis      :
Chance, III, Personal Representatives,   :
:
        Plaintiff,        :
:
    v.                   :        C.A. No. 05-449-SLR
:
FIRST CORRECTIONAL MEDICAL   :
INC., et al.,                              :
        Defendants.       :

## DEFENDANTS', TALLEY AND TAYLOR,  ANSWERING BRIEF

## OPPOSING

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

## AND

## PLAINTIFF'S MOTION TO EXTEND DISCOVERY

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

Marc P. Niedzielski (# 2616)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)  577-8400

DATED:  February 5, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................3

NATURE AND STAGE OF PROCEEDINGS .......................................................4

SUMMARY OF THE ARGUMENT ......................................................................5

STATEMENT OF THE FACTS ..............................................................6

## ARGUMENT I.

PLAINTIFF'S MOTION SHOULD BE DENIED AS THE 2005 NCCHC AUDIT
IS NOT PROBATIVE OF ANY FACTS IN DISPUTE AND IT IS OTHERWISE
PRIVILEGED OR PROTECTED FROM DISCLOSURE ...................................12

## ARGUMENT II.

PLAINTIFF'S MOTION TO EXTEND THE TIME FOR DISCOVERY
SHOULD BE DENIED AS THE DECEMBER 2006 U.S. D.O.J. FINDINGS
LETTER AND THE MOA BETWEEN THE U.S. D.O.J. AND THE STATE OF
DELAWARE ARE UNRELATED LEGALLY AND FACTUALLY TO THE
PRESENT LAWSUIT ...........................................................................17

CONCLUSION ......................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Bredice v. Doctors Hospital, Inc.*,
  50 F.R.D. 249 (D.D.C. 1970), *aff'd* 479 F.2d 920 (D.C. Cir. 1973) .................14

*French v. Medical Center of Delaware*,
  C.A. No. 92-739 RRM (D.Del. Oct. 6, 1984).....................................................15

*Hadix v. Caruso*, 2006 LEXIS 72967 (W.D.Mich. Oct. 6, 2006) ..........................14

*Hadix v. Caruso*, 2006 LEXIS 75765 (W.D.Mich. Oct. 18, 2006) ........................18

*Jaffee v. Redmond*, 518 U.S. 1 (1996) ....................................................................15

*Pearson v. Miller*, 211 F.2d 57 (3d Cir. 2000) .......................................................15

*Surtees v. First Correctional Medical*,
  C.A. No. 05C-09-236 PLA (Del. Super. Mar. 14, 2006)...................................13

*Todd v. South Jersey Hosp. System*, 152 F.R.D. 676 (D.N.J. 1993).......................14

*U.S. v. Dexter Corp.*, 132 F.R.D. 8 (D.Conn. 1990)...............................................14

## Statutes and Other Authorities

Fed.R.Civ.P. 26(b)(1)................................................................................................12

24 *Del.C.* § 1768 ......................................................................................................15

42 U.S.C. §1983 .........................................................................................................4

42 U.S.C. § 1997 ......................................................................................................17

## NATURE AND STAGE OF THE PROCEEDINGS

On June 29, 2005, this matter was commenced by filing a complaint under 42 USC § 1983 and state law claims for medical malpractice regarding plaintiff's decedent Louis W. Chance, Jr.  At the same time, a motion for admission to appear *pro hac vice* was made on behalf of Kenneth W. Richmond, Esquire.  (D.I. 1 -2)

On August 17, 2005, the *pro hac vice* motion for Mr. Richmond was granted.

On September 16, 2005, an amended complaint was filed that added defendants Stan Taylor and Joyce Talley.  (D.I. 3)

On January 25, 2006, the Court entered the present scheduling order that had been proposed by the parties. (D.I. 24)  Thereafter, the parties engaged in discovery.

On January 18, 2007, plaintiff filed a motion to extend the time to complete discovery and a motion to compel discovery regarding an NCCHC audit conducted in 2005.

This is Talley's and Taylor's opposition to both motions.

## SUMMARY OF THE ARGUMENT

### I.

The plaintiff seeks to compel production of the 2005 NCCHC audit, which is unrelated to the pending lawsuit where plaintiff's decedent died on September 23, 2003.  The audit was conducted in January 2005, on inmates that were in custody at the time of the audit. Decedent was not the subject of any inquiry during the audit.  Even if the audit could lead to discovery of admissible evidence, it is privileged under state law and should be protected under federal law.

### II.

Plaintiff's request to extend the discovery deadline and reschedule trial due to the recent CRIPA inquiry by the U.S. Department of Justice should be denied as the recent inquiry did not include facts related to plaintiff's decedent nor would the inquiry be relevant to the pending lawsuit.

## STATEMENT OF THE FACTS

The record in this case reveals that in April 2003, plaintiff's decedent, Louis Chance, Jr., [hereafter "Chance", "inmate" or "decedent"] was committed to the custody of the Department of Correction by the Superior Court for New Castle County for the felony crime of driving under the influence of drugs or alcohol (4th offense).

Decedent was assigned to the Howard R. Young Correctional Institute ["HRYCI"] for intake purposes.

On May 14, 2003, he was interviewed by a nurse for the standard intake screening. (Plaintiff's production Bates Stamped 0066-67) During that screening, Chance denied any intravenous drug use[1], exposure to HIV and denied any sexually transmitted diseases[2]. On that same day, plaintiff's decedent was provided with educational materials on HIV, Hepatitis and personal hygiene. Chance denied drug use. (Plaintiff's production Bates Stamped 0125, 0103)

On May 16, 2003, Chance was examined and counseled regarding his recent test coming back as positive for Hepatitis C. Chance stated that he had a history of liver disease and was unable to provide the doctor with any additional information. The inmate was scheduled for and received vaccinations for

---

[1] Plaintiff Louis Chance, III, (decedent's son) testified on April 27, 2006: "How did I learn about heroin? My father used to use…Q. Well, you became familiar with heroin from your father; is that a fair statement? A. Yes, that's a fair statement. *** Q. How would your father use heroin? A. He would snort it and I think he would inject once in a while. Deposition Transcript at 44 - 45.

[2] Unknown to the defendants, decedent was in St.Francis Hospital for a sexually transmitted disease epididymitis from March 30 to April 2, 2002.

Hepatitis A and B, but was unsuitable for interferon treatment. (Plaintiff's production Bates Stamped 0103, 0078)

On July 16, 2003, plaintiff's decedent was transferred to the Webb Correctional Facility which is located at Prices Corner, suburban Wilmington. The Webb facility is used by the Department of Correction for inmates that are substance abusers that are serving a sentence.

On September 8, 2003, decedent filled out a sick call slip complaining of a headache and was seen, examined and assessed by the nurse. (Plaintiff's production Bates Stamped 0122)  The decedent told the nurse that he had a history of migraines. (Plaintiff's production Bates Stamped 0095)

The next day decedent was seen by Dr. M. Yu, M.D. who examined and proscribed Motrin at 800mg for 5 days and prescribed hydrocortisone lotion for the rash on his face. (Plaintiff's production Bates Stamped 0129, 010)

On September 11, 2003, after being examined by the nurse at Webb, Chance was transferred to receive medical treatment at the infirmary within the HRYCI as he had taken 15 pills of 800 mg of Motrin at one time.  At HRYCI, the inmate was seen and examined by a Physician's Assistant who found that his vital signs and neurological functions were all normal and directed his return to Webb. (Plaintiff's production Bates Stamped 0100, 0130)

On September 12, 2003, after being called a number of times by the nurse at Webb, the inmate refused to come to the dispensary for his pain medications. On the same day the inmate was transferred to the infirmary at HRYCI for

observation for possible overdose of medication. During this period the inmate was urinating on the floor, banging on the door and hollering. (Plaintiff's production Bates Stamped 0090)

On September 13, 2003, the inmate was assessed by the Nurses who found his vital signs normal and that he complained of migraines using vulgar language and hollering. Subsequently, he was seen and evaluated by a mental health counselor who placed him on PCO II which is protective surveillance to protect him from himself. (Plaintiff's production Bates Stamped 0090) Later that day the inmate became violent and threatened to strike a nurse. Dr. Jose Aramburo ordered sedatives for Chance who thereafter was resting quietly and sleeping. (Plaintiff's production Bates Stamped 0131, 0089)

On September 14, 2003, Chance was still on PCO II watch status, but interacted normally with the medical personnel. The inmate continued to complain of headaches and his vital signs were normal. *Id*

On September 15, 2003, Chance was examined by a Psychiatrist and later by a Physician's Assistant [hereafter "PA"]. The Psychiatrist discontinued the inmate's PCO II status. (Plaintiff's production Bates Stamped 0086) The PA prescribed 600 mg of Motrin twice a day for three days. (Plaintiff's production Bates Stamped 0085)

On September 16, 2003, Chance was assessed by two nurses who indicated that he was alert with no further complaints. (Plaintiff's production Bates Stamped 0085, 0086) The inmate was also seen by and fully examined by Dr. N. Shah,

who ordered a battery of laboratory tests. (Plaintiff's production Bates Stamped 0108)

On September 17, 2003, Chance was seen by a number of healthcare providers, including two nurses and a PA.  The inmate continued to complain of headache, but without apparent distress.  On that same day, his medications were changed to include caffeine.  Chance reported that the combination had relieved his headache. (Plaintiff's production Bates Stamped 0184)

On September 17, 2003 at 6:52 P.M., Chance was returned to Webb from the infirmary at HRYCI.

On September 18, 2003, Chance was seen by the nurse at Webb for blood work.  The inmate was called to come down to the dispensary for medications, but he refused.  (Plaintiff's production Bates Stamped 0109)

On September 19, 2003, Chance was seen by a mental health counselor at the request of medical regarding his complaints of headache.  After an examination, the counselor suggested possible nicotine withdrawal and referred his care back to medical.  (Plaintiff's production Bates Stamped 0111)

On September 21, 2003 at around midnight, the inmate was transported to the infirmary at HRYCI with complaints of severe abdominal pain. (Plaintiff's production Bates Stamped 0072) He was interviewed with the standard intake screening form and again he denied any intravenous drug use, exposure to HIV and denied any sexually transmitted diseases.  (Plaintiff's production Bates Stamped 0062-0063)

After Chance was admitted to the infirmary, he told the nurse that he had pain all over his body, but could not direct the nurse to any specific location of the pain. He was examined and assessed by the nurse.  Later that same day, Chance was examined and assessed by another nurse who found the inmate alert, calm and cooperative.  His vital signs were normal.  (Plaintiff's production Bates Stamped 0074)

Chance was then examined by a PA who also found that his vital signs were normal and prescribed Maalox and a clear fluid diet (Plaintiff's production Bates Stamped 0074 -0073)

On September 22, 2003, Chance was seen in the infirmary by a PA.  The PA examined the inmate who complained of headache, stomach and chest pain.  The PA noted that Chance was in no apparent distress and continued his medications and Maalox.  (Plaintiff's production Bates Stamped 0071)

Later that morning, Chance was seen by an optometrist who performed a funduscope examination of his eyes.  The examination revealed papilliedema which is swelling of the optic disc.  The optometrist recommended a CT scan to rule out a space occupying lesion.  (Plaintiff's production Bates Stamped 0069) Shortly thereafter, defendant Dr. Shah ordered an MRI to be performed at St. Francis Hospital on an urgent basis. *Id.*

On September 23, 2003, in the early morning, Chance was found by a nurse to be non-responsive and summoned the doctor.  They performed an examination and started emergency procedures that included calling 911 for an emergency

transport to St. Francis hospital. (Plaintiff's production Bates Stamped 0071, 0070)

Chance was transported to the hospital where emergency measures were performed, but he was pronounced dead at 9:52 A.M.  (Plaintiff's production Bates Stamped 0152)

The postmortem examination by Deputy Chief Medical Examiner Adrienne Perlman, M.D., revealed that decedent died from a very rare fungal infection of the brain which was enabled by undiagnosed HIV/AIDS. (Plaintiff's production Bates Stamped 0036-40)  The death certificate classified the death as natural. (Plaintiff's production Bates Stamped 0035)

## ARGUMENT I.

PLAINTIFF'S MOTION SHOULD BE DENIED AS THE 2005 NCCHC AUDIT IS NOT PROBATIVE OF ANY FACTS IN DISPUTE AND IT IS OTHERWISE PRIVILEGED OR PROTECTED FROM DISCLOSURE.

### (a)    The Audit is not relevant nor will it lead to admissible evidence

The scope of discovery under the federal rules is broad, but it is not without limitations.  see Fed.R.Civ.P. 26(b)(1).  Plaintiff moves for an order "requiring that any reports characterized as 'peer review' be produced."   While plaintiff has not specifically requested production of the 2005 NCCHC Audit, the issue arose in deposition where Commissioner Taylor was asked of its content.    Taylor and Talley do not assert privilege regarding the mortality review that plaintiff has had in its possession and produced as its initial production. (Plaintiff's production Bates Stamped 0041-0045)

Plaintiff seeks disclosure of the NCCHC audit dated February 28, 2005[3], which is completely unrelated in time and has nothing to do with decedent's prior illness and death on September 23, 2003.  The auditors only reviewed the medical records of inmates being treated at the time of the audit, i.e. January 2005. It is undisputed that decedent first complained of headache on September 9, 2003, it is undisputed that he was treated and seen by physicians, physician's assistants and nurses during that relevant period. (see the extensive nature of medical care as set

---

[3] The audit is a document that consists of a cover sheet and 28 pages of content with 5 pages of attachments. The document will be provided to the Court under seal for an *in camera* review, if the Court so directs.

out in the statement of facts)   It is undisputed that he was transported from the Prices Corner Webb facility to the infirmary at the Howard R. Young Correctional Institution twice and was subsequently taken by ambulance to St. Francis Hospital, where he died.

All medical records of decedent have been produced to plaintiff and based on those records there was a sufficient basis for an expert (Joe Goldenson, M.D.) to opine on the sufficiency of decedent's medical care. (See plaintiff's disclosures bates-stamped 0001-0005).

In contrast, none of the records reviewed by the auditors were those of the decedent and are therefore irrelevant and beyond the scope of Rule 26.  In fact, nowhere in plaintiff's papers is it suggested that there is any relevancy to the present lawsuit.

**(b)      The Audit is peer review material that is privileged or protected**

If the Court were to determine that the 2005 Audit is somehow germane to the present matter, the defendants Talley and Taylor will demonstrate that it should nevertheless be protected from disclosure.

The same audit was previously the subject of litigation in the Delaware Superior Court.   In that matter plaintiff sought to compel production of the document in a medical malpractice action of *Michael Surtees v. First Correctional Medical,* C.A. No. 05C-09-236-PLA.   In *Surtees,* the Court after a review of the document *in camera* concluded that the document was directed to systemic recommendations and had no bearing on an individual case. (Mar. 14, 2006 Letter

opinion attached)

The present lawsuit contains claims under both state and federal law. Generally, the question of privilege in this circuit is controlled by Rule 501 and is determined by "the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience." *Id.*

Plaintiff sets out authorities where federal courts have recognized the peer review privilege in cases involving prisoners alleging unconstitutional medical care as the present matter and cites *Hadix v. Caruso*, 2006 U.S. Dist. LEXIS 72967 (W.D. Mich. Oct. 6, 2006). In addition, to the peer review cases, a similarly recognized federal privilege is known as the self-critical analysis which has broader federal support. Federal courts first recognized the privilege of self-critical analysis in *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249, 251 (D.D.C. 1970), *aff'd*, 479 F.2d 920 (D.D.C. Cir. 1973)[The *Bredice c*ourt held that absent evidence of extraordinary circumstances, a hospital has a qualified privilege to retain minutes and reports of medical staff meetings during which doctors critically analyzed the hospital's medical care]; see also *U.S. v. Dexter Corp.*, 132 F.R.D. 8, 9 (D.Conn. 1990); *Todd v. South Jersey Hosp. System,* 152 F.R.D. 676 (D.N.J. 1993) [4]. Under the *Todd* balancing test, the audit would remain undisclosed as it does not contain any information on the present lawsuit.

---

[4] The District Court in *Todd* provides a balancing test regarding the self-critical analysis: (1) the extent to which the information may be available from other sources; (2) the degree of harm the litigant will suffer from its unavailability; and (3) the possible prejudice to the defendant's interest in maintaining nondisclosure.

*Pearson v. Miller*, 211 F.2d 57, 67 (3d Cir. 2000) contains the analysis in this circuit for claims of privilege under federal law that arise under state law.

> The case for recognizing a particular federal privilege is stronger, however, where the information sought is protected by a state privilege. '[T]he policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one.'" *Jaffee v. Redmond*, 518 U.S. 1 (1996); *Id.*

Plaintiff does not challenge that the 2005 Audit is privileged under state law. As indicated above, Plaintiff does not suggest that the 2005 Audit contains information that is relevant to the present matter. Since the privilege under state law is not contested, it should be recognized in the present matter.

Title 24 *Del.C.* § 1768 provides that all such material are privileged from discovery and not to be disclosed (except to the Board of Medical Practice). The reasons are those as set forth in Judge Ableman's decision wherein she quotes from Judge McKelvie in *French v. Medical Center of Delaware*, C.A. No. 92-739 RRM, at 11 (D.Del. Oct. 6, 1984)

> Rather, the statute is directed at protecting the exchange of ideas, criticisms, and comments that the members of a review committee need to feel free to contribute in order to ensure that the committee's analysis is candid and rigorous and can assist the medical community in reviewing and improving the quality of its services.

Defendants Talley and Taylor have produced thousands of documents to plaintiff in this matter. The documents produced by the plaintiff alone were sufficient for counsel to write a detailed statement of facts and for plaintiff's proffered expert Dr. Goldenson to opine on the medical care to plaintiff's

decedent.  The 2005 NCCHC Audit should remain privileged.

## ARGUMENT II.

PLAINTIFF'S MOTION TO EXTEND THE TIME FOR DISCOVERY SHOULD BE DENIED AS THE DECEMBER 2006 U.S. D.O.J. FINDINGS LETTER AND THE MOA BETWEEN THE U.S. D.O.J. AND THE STATE OF DELAWARE ARE UNRELATED LEGALLY AND FACTUALLY TO THE PRESENT LAWSUIT.

Plaintiff moves to extend the discovery and enter a new scheduling order based on the December 2006 public announcement of the U.S. Department of Justice's inquiry under 42 U.S.C. § 1997 (CRIPA) and a memorandum of agreement between the State of Delaware and the U.S. D.O.J..

The present lawsuit concerns an allegation regarding the death of Louis Chance, Jr. on September 23, 2003. The undisputed record reveals that in April 2003, plaintiffs' decedent, Louis Chance, Jr., was committed to the custody of the Department of Correction by the Superior Court for New Castle County for the felony crime of driving under the influence of drugs or alcohol. The undisputed record reveals that plaintiffs' decedent was serving his sentence at the Webb Correctional Facility, when on September 9, 2003, he complained of a headache for which he was transferred twice to receive medical treatment at the infirmary within the Howard R. Young Correctional Institution ["HRYCI"]. On September 23, 2003, while at the infirmary at HRYCI the decedent was found non-responsive and sent by ambulance to the St. Francis Hospital where he was subsequently pronounced dead.

The postmortem examination revealed that decedent died as result of a very

rare fungal infection of the brain which was enabled by undiagnosed HIV/AIDS.

Nevertheless, Plaintiff complains that defendants should have advised plaintiff of the inquiry that was publicly announced in March 2006 and that 'caused their discovery plan to be altered.'

Plaintiff does not indicate how an inquiry conducted long after plaintiff's decedent's death on September 23, 2003, would be related to the present lawsuit. Plaintiff does not suggest that prior to his pending January 4, 2007 request for production that any inquiry was made by plaintiff regarding the U.S. D.O.J. inquiry.

In contrast to plaintiff's present reasons to delay trial, counsel stated something very differently in a January 4, 2007 e-mail sent to Stephan Hampton, Esquire and carbon copied to defense counsel.

Stephen, for reasons that I cannot explain, we have not yet received Taylor's Dep Copy.  I have downloaded the findings and the ageement.  Under the PLRA, without findings of a district court, it is completely, 100% unenforcible and I cannot understand why Kim permitted this.  It has questionable use as evidence, but at this very moment I'm getting Taylor's Deposition again, if only to clairify that the findings existed during the years 2003 as well as 2004.
Meanwhile, Marc has asseted peer privilege and I'm compelled to send him the law.  Based upon a discussion following yesterday's deposition, Marc seemingly relies upon a Michigan District Court Case (Hadix v. Caruso, 2006 U.S. Dist. LEXIS 75765 (W.D. Mich., Oct. 18, 2006))
 which is dead contrary to the 9th. Circuit in a Prison death Case and the 3rd. Circuit which has declined to observe peer review privilege in any context involving Constitutional Claims.  I'll attach the cases here.  I have emboldened, underlined and italicized the relevant language from the 3rd. Circuit and Supremes cases.

Ken Richmond

In the e-mail, plaintiff's lawyer concedes that both U.S. DOJ findings letter and the MOA with the State are inadmissible and implicitly concedes they are irrelevant based on the time of the inquiry.  Neither the State of Delaware nor the

Department of Correction are a present defendant and to the extent the state hired experts for the CRIPA matter, that would remained privileged under work product privilege.

The plaintiff's motion to extend discovery due to the U.S. D.O.J.'s concluded CRIPA inquiry should be denied.

## <u>CONCLUSION</u>

For reasons set forth above the Court should deny plaintiff's motion to compel discovery of the 2005 NCCHC audit, and deny plaintiff's motion to extend discovery due to the concluded CRIPA inquiry.

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 5, 2007, he caused the

**Defendants' Talley and Taylor, Answering Brief Opposing Plaintiff's Motion**

**to Compel Discovery and Plaintiff's Motion to Extend Discovery** to be served

on the following persons via electronic mail:

### NAME AND ADDRESS OF RECIPIENT(S):

| | |
|---|---|
| Kenneth W. Richmond, Esq.<br>Pro Hac Vice<br>kennyrichmond@comcast.net | Dana Spring Monzo, Esq.<br>McCullough & McKenty, P.A.<br>1225 North King Street, Suite 1100<br>P.O. Box 397<br>Wilmington, DE 19899-0397<br>dmonzo@mccmck.com |
| Jeffrey K. Bartels, Esquire<br>401 South Maryland Avenue<br>Wilmington, DE 19804<br>outlaw1@rcn.com | |

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Marc P. Niedzielski
Marc P. Niedzielski, I.D. #2616
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendants Taylor and
Talley