# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ESTATE OF LOUIS W. CHANCE, JR., :
by Amanda Humphreys and Louis :
Chance, III, Personal Representatives, :
: 
        Plaintiff, :
: 
    v. :    C.A. No. 05-449-SLR
: 
FIRST CORRECTIONAL MEDICAL :
INC., et al., :
        Defendants. :

## DEFENDANTS TALLEY'S AND TAYLOR'S ANSWERING BRIEF

## OPPOSING

## PLAINTIFF'S 2nd MOTION TO COMPEL DISCOVERY

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

Marc P. Niedzielski (# 2616)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)  577-8400

DATED:  March 2, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................3

NATURE AND STAGE OF PROCEEDINGS .........................................4

SUMMARY OF THE ARGUMENT .......................................................6

STATEMENT OF THE FACTS ............................................................7

## ARGUMENT I.

PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY
SHOULD BE DENIED AS COUNSEL FAILED TO COMPLY
WITH LOCAL RULE 7.1.1 THAT REQUIRES THAT THE
MOVING PARTY CERTIFY THAT COUNSEL HAS MADE A
REASONABLE EFFORT TO REACH AGREEMENT WITH
OPPOSING COUNSEL ON THE MATTERS SET FORTH IN THE
MOTION.......................................................................................13

## ARGUMENT II.

ALTERNATIVELY, PLAINTIFF'S 2ND MOTION TO COMPEL
DISCOVERY SHOULD BE DENIED AS THE DOCUMENTS
PRODUCED TO THE U.S. DEPARTMENT OF JUSTICE
PURSUANT TO CRIPA STATUTE IS LEGALLY AND
FACTUALLY UNRELATED TO THE PRESENT MATTER AND
ARE OTHERWISE PRIVILEGED.............................................16

CONCLUSION .................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Bayer AG v. Housey Pharmaceuticals, Inc.,* 2002 WL 31433303,
C.A. No. 01-148-SLR, (D.Del. June 20, 2002) .......................................................15

*DeWitt v. Penn-Del Directory Corporation*,
912 F.Supp 707 (D.Del. 1996) *affirmed in part* , *reversed in part*,
106 F.3d 514 (3d Cir. 1997)......................................................................................15

*Hadix v. Caruso*, 2006 U.S. Dist. LEXIS 75765 (W.D.Mich., Oct. 18, 2006) ......19

*Monell v. Department of Social Services of the City of New York,*
 436 U.S. 658 (1978) ..................................................................................................20


*Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989)...................................20

**Statutes and Other Authorities**

Fed.R.Civ.P. 26(b) ....................................................................................................17

Fed.R.Civ.P. 34(b) ...............................................................................................6, 16

L.R. 7.1.1..............................................................................................................6, 15

42 U.S.C. §260 ..........................................................................................................13

42 U.S.C. §1983 ....................................................................................................4, 20

CRIPA, 42 U.S.C. § 1997 .................................................................................. Passim

11 Del.C. §4322 ........................................................................................................13

16 Del.C. §711 ..........................................................................................................13

## NATURE AND STAGE OF THE PROCEEDINGS

On June 29, 2005, this matter was commenced by filing a complaint under 42 USC § 1983 and state law claims for medical malpractice regarding plaintiff's decedent Louis W. Chance, Jr.  At the same time, a motion for admission to appear *pro hac vice* was made on behalf of Kenneth W. Richmond, Esquire.  (D.I. 1 -2)

On August 17, 2005, the *pro hac vice* motion for Mr. Richmond was granted.

On September 16, 2005, an amended complaint was filed that added defendants Stan Taylor and Joyce Talley.  (D.I. 3)

On January 25, 2006, the Court entered the present scheduling order that had been proposed by the parties. (D.I. 24)  Thereafter, the parties engaged in discovery.

On January 18, 2007, plaintiff filed a motion to extend the time to complete discovery and a motion to compel discovery regarding an NCCHC audit conducted in 2005. That matter has been briefed and is pending decision by the Court.

On January 24, 2007, opposing defendants produced and gave access to the parties of thousands of pages of requested documents. (D.I.50) (Response to Plaintiff's 1st request for production attached)

On February 5, 2007, opposing defendants responded to plaintiffs' 2nd Request for Documents.  (D.I. 54)

- 4 -

On February 15, 2007, plaintiffs filed their 2nd motion to compel discovery. Specifically, plaintiffs seeks all the documents that the State of Delaware produced to the U.S. Department of Justice pursuant to 42 USC § 1997, et seq. (CRIPA)

This is Talley's and Taylor's opposition to the motion.

## SUMMARY OF THE ARGUMENT

### I.

The plaintiff seeks to compel production of all documents produced or shared with the U.S. Department of Justice pursuant to an inquiry under CRIPA. Plaintiff's 2nd Request for Production is directed to this subsequent inquiry. Plaintiff's motion should be denied as counsel failed to engage in any efforts with defendants' counsel to seek agreement or a modification of the original request as required under Local Rule 7.1.1

### II.

Alternatively, the request for the documents violates the requirements of Rule 34(b) and seeks documents that are beyond the scope of discovery factually and legally. Moreover, the documents are otherwise privileged.  The U.S. Department of Justice's role and authority under 42 USC § 1997 is quite different that the present lawsuit for money damages brought by the plaintiff regarding the specific care provided the decedent   In the former case, the inquiry is directed to the State itself, while in the present case the allegations are against State actors in their individual and personal capacities, only.

## **STATEMENT OF THE FACTS**

The record in this case reveals that in April 2003, plaintiff's decedent, Louis Chance, Jr., [hereafter "Chance", "inmate" or "decedent"] was committed to the custody of the Department of Correction by the Superior Court for New Castle County for the felony crime of driving under the influence of drugs or alcohol (4th offense).

Decedent was assigned to the Howard R. Young Correctional Institution ["HRYCI"] for intake purposes.

On May 14, 2003, he was interviewed by a nurse for the standard intake screening. (Plaintiff's production Bates Stamped 0066-67)  During that screening, Chance denied any intravenous drug use[1], exposure to HIV and denied any sexually transmitted diseases[2].  On that same day, plaintiff's decedent was provided with educational materials on HIV, Hepatitis and personal hygiene. Chance denied drug use. (Plaintiff's production Bates Stamped 0125, 0103)

On May 16, 2003, Chance was examined and counseled regarding his recent test coming back as positive for Hepatitis C.  Chance stated that he had a history of liver disease and was unable to provide the doctor with any additional information.  The inmate was scheduled for and received vaccinations for

---

[1] Plaintiff Louis Chance, III, (decedent's son) testified on April 27, 2006: "How did I learn about heroin? My father used to use…Q. Well, you became familiar with heroin from your father; is that a fair statement? A. Yes, that's a fair statement. *** Q. How would your father use heroin? A. He would snort it and I think he would inject once in a while. Deposition Transcript at 44 - 45.

[2] Unknown to the defendants, decedent was in St. Francis Hospital for a sexually transmitted disease epididymitis from March 30 to April 2, 2002.

Hepatitis A and B, but was unsuitable for interferon treatment. (Plaintiff's production Bates Stamped 0103, 0078)

On July 16, 2003, plaintiff's decedent was transferred to the Webb Correctional Facility which is located at Prices Corner, suburban Wilmington. The Webb facility is used by the Department of Correction for inmates that are substance abusers that are serving a sentence.

On September 8, 2003, decedent filled out a sick call slip complaining of a headache and was seen, examined and assessed by the nurse. (Plaintiff's production Bates Stamped 0122) The decedent told the nurse that he had a history of migraines. (Plaintiff's production Bates Stamped 0095)

The next day decedent was seen by Dr. M. Yu, M.D. who examined and proscribed Motrin at 800mg for 5 days and prescribed hydrocortisone lotion for the rash on his face. (Plaintiff's production Bates Stamped 0129, 010)

On September 11, 2003, after being examined by the nurse at Webb, Chance was transferred to receive medical treatment at the infirmary within the HRYCI as he had taken 15 pills of 800 mg of Motrin at one time. At HRYCI, the inmate was seen and examined by a Physician's Assistant who found that his vital signs and neurological functions were all normal and directed his return to Webb. (Plaintiff's production Bates Stamped 0100, 0130)

On September 12, 2003, after being called a number of times by the nurse at Webb, the inmate refused to come to the dispensary for his pain medications. On the same day the inmate was transferred to the infirmary at HRYCI for

observation for possible overdose of medication. During this period the inmate was urinating on the floor, banging on the door and hollering. (Plaintiff's production Bates Stamped 0090)

On September 13, 2003, the inmate was assessed by the Nurses who found his vital signs normal and that he complained of migraines using vulgar language and hollering. Subsequently, he was seen and evaluated by a mental health counselor who placed him on PCO II which is protective surveillance to protect him from himself. (Plaintiff's production Bates Stamped 0090) Later that day the inmate became violent and threatened to strike a nurse. Dr. Jose Aramburo ordered sedatives for Chance who thereafter was resting quietly and sleeping. (Plaintiff's production Bates Stamped 0131, 0089)

On September 14, 2003, Chance was still on PCO II watch status, but interacted normally with the medical personnel. The inmate continued to complain of headaches and his vital signs were normal. *Id*

On September 15, 2003, Chance was examined by a Psychiatrist and later by a Physician's Assistant [hereafter "PA"]. The Psychiatrist discontinued the inmate's PCO II status. (Plaintiff's production Bates Stamped 0086) The PA prescribed 600 mg of Motrin twice a day for three days. (Plaintiff's production Bates Stamped 0085)

On September 16, 2003, Chance was assessed by two nurses who indicated that he was alert with no further complaints. (Plaintiff's production Bates Stamped 0085, 0086) The inmate was also seen by and fully examined by Dr. N. Shah,

who ordered a battery of laboratory tests. (Plaintiff's production Bates Stamped 0108)

On September 17, 2003, Chance was seen by a number of healthcare providers, including two nurses and a PA. The inmate continued to complain of headache, but without apparent distress. On that same day, his medications were changed to include caffeine. Chance reported that the combination had relieved his headache. (Plaintiff's production Bates Stamped 0184)

On September 17, 2003 at 6:52 P.M., Chance was returned to Webb from the infirmary at HRYCI.

On September 18, 2003, Chance was seen by the nurse at Webb for blood work. The inmate was called to come down to the dispensary for medications, but he refused. (Plaintiff's production Bates Stamped 0109)

On September 19, 2003, Chance was seen by a mental health counselor at the request of medical regarding his complaints of headache. After an examination, the counselor suggested possible nicotine withdrawal and referred his care back to medical. (Plaintiff's production Bates Stamped 0111)

On September 21, 2003 at around midnight, the inmate was transported to the infirmary at HRYCI with complaints of severe abdominal pain. (Plaintiff's production Bates Stamped 0072) He was interviewed with the standard intake screening form and again he denied any intravenous drug use, exposure to HIV and denied any sexually transmitted diseases. (Plaintiff's production Bates Stamped 0062-0063)

After Chance was admitted to the infirmary, he told the nurse that he had pain all over his body, but could not direct the nurse to any specific location of the pain. He was examined and assessed by the nurse.  Later that same day, Chance was examined and assessed by another nurse who found the inmate alert, calm and cooperative.  His vital signs were normal.  (Plaintiff's production Bates Stamped 0074)

Chance was then examined by a PA who also found that his vital signs were normal and prescribed Maalox and a clear fluid diet (Plaintiff's production Bates Stamped 0074 -0073)

On September 22, 2003, Chance was seen in the infirmary by a PA.  The PA examined the inmate who complained of headache, stomach and chest pain. The PA noted that Chance was in no apparent distress and continued his medications and Maalox.  (Plaintiff's production Bates Stamped 0071)

Later that morning, Chance was seen by an optometrist who performed a funduscope examination of his eyes.  The examination revealed papilliedema which is swelling of the optic disc.  The optometrist recommended a CT scan to rule out a space occupying lesion.  (Plaintiff's production Bates Stamped 0069) Shortly thereafter, defendant Dr. Shah ordered an MRI to be performed at St. Francis Hospital on an urgent basis. *Id.*

On September 23, 2003, in the early morning, Chance was found by a nurse to be non-responsive and summoned the doctor.  They performed an examination and started emergency procedures that included calling 911 for an emergency

transport to St. Francis Hospital. (Plaintiff's production Bates Stamped 0071, 0070)

Chance was transported to the hospital where emergency measures were performed, but he was pronounced dead at 9:52 A.M. (Plaintiff's production Bates Stamped 0152)

The postmortem examination by Deputy Chief Medical Examiner Adrienne Perlman, M.D., revealed that decedent died from a very rare fungal infection of the brain which was enabled by undiagnosed HIV/AIDS. (Plaintiff's production Bates Stamped 0036-40) The death certificate classified the death as natural. (Plaintiff's production Bates Stamped 0035)

## ARGUMENT I.

PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY SHOULD BE DENIED AS COUNSEL FAILED TO COMPLY WITH LOCAL RULE 7.1.1 THAT REQUIRES THAT THE MOVING PARTY CERTIFY THAT COUNSEL HAS MADE A REASONABLE EFFORT TO REACH AGREEMENT WITH OPPOSING COUNSEL ON THE MATTERS SET FORTH IN THE MOTION.

### Introduction

Plaintiff seeks an order compelling Talley and Taylor to produce all the documents produced by the State of Delaware[3] to the United States Department of Justice under its recently concluded inquiry under CRIPA, 42 USC § 1997, et seq. and to pay plaintiff's lawyer 20 hours of time as a sanction.

Specifically, plaintiffs made the following request to which Talley and Taylor responded:

> 4.      Copies of all Documents provided to, copied for, or inspected by the United States Department of Justice, whether subpoenaed or produced in response to a request by any staff of the United States Department of Justice in connection with any investigation of health care in the Delaware Department of Correction.
>
> **RESPONSE**:    Without waiving the prior objections[4], additional objection is made as many of the documents are privileged or not discoverable under a number of laws including attorney client privilege, work product, peer review, self-critical analysis, HIPAA, 11 *Del.C.* § 4322, 16 *Del.C.* § 711, 42 USC § 260

---

[3] The documents are not in either Talley's or Taylor's possession.  They are in the possession of an outside law firm that represented the State of Delaware in the concluded CRIPA inquiry.

[4] This references defendants' basic objection as the request seeks documents that are clearly irrelevant and are not reasonably calculated to lead to admissible evidence.

and other laws that protect substance abuse and treatment records. Additionally, some of the information provided is propriety and protected as commercial secrets. Additionally, this request is unduly burdensome as more than 26,000 documents were produced by the Department of Correction to the U.S. D.O.J. under the terms of a confidentially agreement. Without waiving any of these objections, counsel for responding defendants had a Concordia search perform on all those documents and only a single document with the decedent's name was identified which is Bates Stamped as DDOC 008896. This document will not be produced as it was created by a representative of the Department of Correction on October 4, 2006, and is protected as work product privilege.

It is undisputed that decedent first complained of headache on September 9, 2003. It is undisputed that he was treated and seen by physicians, physician's assistants and nurses during that relevant period. (see the extensive nature of medical care as set out in the statement of facts) It is undisputed that he was transported from the Prices Corner Webb facility to the infirmary at the Howard R. Young Correctional Institution twice and was subsequently taken by ambulance to St. Francis Hospital, where he unfortunately died.

All medical records in opposing defendants' possession on decedent have been produced to plaintiff, and based on those records there was a sufficient basis for a purported expert (Joe Goldenson, M.D.) to opine on the sufficiency of decedent's medical care. (See plaintiff's disclosures bates-stamped 0001-0005). Moreover, plaintiffs have deposed all the defendants and been given access or provided with thousands of pages of documents including: The Medical Review Committee meeting for all of 2003 that involve Webb and HRYCI, the grievance reports for Webb and HRYCI; budget documents for multiple years, the Request

for Proposals and bid responses for May 2002 for the Health Services contract, the Bid rating documents, contract documents; accreditation documents from NCCHC, List of medical vendor employees for Webb and HRYCI for 2003.

### Motion violates Local Rule 7.1.1

As preliminary matter, plaintiff's motion should be denied as counsel failed to properly proceed under the Local Rules of the District. Local Rule 7.1.1 requires that plaintiff's motion must be accompanied by a certification by counsel of the efforts he undertook to resolve the issue before requesting the Court assistance.

> Unless otherwise ordered, the Court will not entertain any non-dispositive motion, …unless counsel for the moving party files with The Court, at the time of filing the motion, a statement showing that the attorney making the motion has made a reasonable effort to reach agreement with the opposing attorneys on the matters set forth in the motion. Local Rule 7.1.1

Plaintiffs' motion contains no such certification, nor has plaintiffs' counsel undertaken any efforts to seek agreement with defense counsel before filing the motion. For this failure alone, the motion to compel must be denied. *DeWitt v. Penn-Del Directory Corporation*, 912 F.Supp 707, 712-713 (D.Del. 1996) )[Rule 7.1.1 was designed to facilitate resolution of disputes among the parties before formally requesting the Court's aid …], *affirmed* , *reversed in part on other grounds*, 106 F.3d 514 (3d Cir. 1997); *Bayer AG v. Housey Pharmaceuticals, Inc.,* 2002 WL 31433303 , C.A. No. 01-148-SLR, (D.Del. June 20, 2002).

## ARGUMENT II.

ALTERNATIVELY, PLAINTIFF'S 2ND MOTION TO COMPEL DISCOVERY SHOULD BE DENIED AS THE DOCUMENTS PRODUCED TO THE U.S. DEPARTMENT OF JUSTICE PURSUANT TO CRIPA STATUTE IS LEGALLY AND FACTUALLY UNRELATED TO THE PRESENT MATTER AND ARE OTHERWISE PRIVILEGED

The request made by plaintiff for all the documents provided to the U.S. D.O.J. is clearly over broad and not calculated to elicit discoverable information in the pending case. Moreover, it does not permit responding defendants to assert specific privileges as would be done if plaintiff had complied with Rule 34. Rule 34(b) requires that the party requesting documents "shall set forth, either by individual item or by category, the items to be inspected, and describe each with reasonable particularity." *Id.* Due to plaintiff's sweeping request, responding defendants were left with the only option of making very general claims of privileges.

The documents[5] provided to the U.S.D.O.J. include, by example: MRC minutes for 2005, present medical vender (Correctional Medical Services) protocols, CMS employee orientation materials, sample forms used in the present medical records, selected utilization reviews for 2006, organization charts, average prison population numbers, CMS National Formulary 2006, etc. some selected medical files on inmates were provided, but not decedent's records. Some of the

---

[5] If the Court desires, Defendants will provide the Court with the 25 page production log which identifies the documents provided to the U.S. D.O.J. for an *in camera* review.

items produced to the U.S. D.O.J. have been provided to plaintiff.

The pending case involves medical care provided an inmate from September 9, 2003 to September 23, 2003. It is undisputed that decedent first complained of headache on September 9, 2003. It is undisputed that he was treated and seen by physicians, physician's assistants and nurses during that relevant period. (see the extensive nature of medical care as set out in the statement of facts) It is undisputed that he was transported from the Prices Corner Webb facility to the infirmary at the Howard R. Young Correctional Institution twice and was subsequently taken by ambulance to St. Francis Hospital, where he died.

Plaintiff correctly states that the scope of discovery under Rule 26(b) was narrowed by reducing the scope of discovery to matters relevant to the present claims or defenses of the parties. (Plaintiff's Motion to Compel, Argument I [pages are not numbered]) Plaintiff's claims against Talley and Taylor are found in the amended complaint at paragraphs 27, 28 and 29.

**(a)     Allegations in the amended complaint against Joyce Talley.**

The single allegation against Joyce Talley is that "she assumed a duty to insure efficient and effective health care to decedent Chance, and in spite of numerous inmate complaints…under the contract [she] remained deliberately indifferent to the medical plight of …decedent Chance in particular by failing to order or require inmates to receive adequate, needed medical care…" Based on this allegation the information relevant to this claim would be whether Talley

assumed such a duty and her information and knowledge of decedent Plaintiff have been provided all contract documents, inmate grievances, medical records, and plaintiff deposed Joyce Talley. Information provided by the State of Delaware, under a confidentiality agreement, to the U.S. D.O.J. pursuant to a CRIPA inquiry which was looking at the present healthcare with a different medical vender does not touch on plaintiff's present allegation.

**(b)    Allegations in the amended complaint against Stan Taylor.**

The allegations against Stan Taylor are that as a direct result of cost containment practices a timely MRI was not ordered for the decedent, and these same cost containment practices resulted in inadequate medical staffing, inadequate training and a lack of transport to off site medical facilities. (Amended Complaint, ¶¶ 26, 27)    Additionally, plaintiff alleges that the failure to provide required diagnostic care was the result of a contractual agreement between Taylor and FCM.    Based on these allegations, the information relevant to this claim would be the contract, if any, between Taylor and FCM and the nature of the cost containment practices, if any.

Plaintiff has been provided all contract documents, inmate grievances, medical records, lists of medical vender employees for the entire year of 2003 for Webb and HRYCI, the Request for Proposals, the bids received and plaintiff has deposed Joyce Talley, Stan Taylor, Defendant physicians Niranjana Shah, M.D., Jose Aramburo, M.D., the medical director for FCM at the time, Dr. Sitta Gombeh-Alie, M.D. and DOC Health Service Director James C. Welch.

As previously stated, the information provided plaintiff was sufficient for a purported expert (Joe Goldenson, M.D.) to opine on the sufficiency of decedent's medical care. (See plaintiff's disclosures bates-stamped 0001-0005). Moreover, plaintiffs have deposed all the defendants and been given access or provided with thousands of pages of documents including: The Medical Review Committee meeting for all of 2003 that involve Webb and HRYCI, the grievance reports for Webb and HRYCI; budget documents for multiple years, the Request for Proposals and bid responses for May 2002 for the Health Services contract, the Bid rating documents, contract documents; accreditation documents from NCCHC, List of medical vendor employees for Webb and HRYCI for 2003.

In a January 4, 2007 e-mail[6], plaintiff's lawyer concedes that both U.S. DOJ findings letter and the MOA with the State are inadmissible and implicitly concedes they are irrelevant based on the time of the inquiry. (the e-mail was addressed to Steven Hampton, Esquire and carbon copied defense counsel)

---

[6] Stephen, for reasons that I cannot explain, we have not yet received Taylor's Dep Copy. I have downloaded the findings and the ageement. Under the PLRA, without findings of a district court, it is completely, 100% unenforcible and I cannot understand why Kim permitted this. It has questionable use as evidence, but at this very moment I'm getting Taylor's Deposition again, if only to clairify that the findings existed during the years 2003 as well as 2004.

Meanwhile, Marc has asseted peer privilege and I'm compelled to send him the law. Based upon a discussion following yesterday's deposition, Marc seemingly relies upon a Michigan District Court Case (Hadix v. Caruso, 2006 U.S. Dist. LEXIS 75765 (W.D. Mich., Oct. 18, 2006)) which is dead contrary to the 9th. Circuit in a Prison death Case and the 3rd. Circuit which has declined to observe peer review privilege in any context involving Constitutional Claims. I'll attach the cases here. I have emboldened, underlined and italicized the relevant language from the 3rd. Circuit and Supremes cases.

Ken Richmond

Neither the State of Delaware nor the Department of Correction is a present defendant and to the extent the State retained experts for the CRIPA inquiry, that would remain privileged under work product privilege.

Throughout plaintiff's motion citation is made to a line of cases that involve liability of a municipality or county for unconstitutional policy or custom. Those cases are inapposite in the present matter.   Municipalities and counties are persons for purposes of liability under 42 USC § 1983 and may be liable for their official policies, but not States.  *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690 fn. 54, 55 (1978); *Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989).

The plaintiff's 2nd motion to compel discovery should be denied as the documents produced to the United States by the State of Delaware in concluded CRIPA inquiry are not relevant nor will they lead to discoverable evidence and are otherwise privileged.

## <u>CONCLUSION</u>

For reasons set forth above the Court should deny plaintiff's 2nd motion to compel discovery as to documents provided to the United States by the State of Delaware pursuant to the concluded CRIPA inquiry.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Marc P. Niedzielski
Marc P. Niedzielski, I.D. #2616
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendants Taylor and Talley

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 2, 2007, he caused the **Defendants Talley's and Taylor's Answering Brief Opposing Plaintiff's 2nd Motion to Compel Discovery** to be served on the following persons via electronic mail:

### NAME AND ADDRESS OF RECIPIENT(S):

Kenneth W. Richmond, Esq.
Pro Hac Vice
kennyrichmond@comcast.net

Dana Spring Monzo, Esq.
McCullough & McKenty, P.A.
1225 North King Street, Suite 1100
P.O. Box 397
Wilmington, DE 19899-0397
dmonzo@mccmck.com

Jeffrey K. Bartels, Esquire
401 South Maryland Avenue
Wilmington, DE 19804
outlaw1@rcn.com

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Marc P. Niedzielski
Marc P. Niedzielski, I.D. #2616
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendants Taylor and Talley