## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ESTATE OF LOUIS W. CHANCE** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs** | ) | **C.A. No. 05-449-SLR** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FIRST CORRECTIONAL MEDICAL** | ) | **JURY OF 12 DEMANDED** |
| **LLC, DR. NIRANJANA SHAH, AND** | ) | |
| **DR. JOSE ARAMBURO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### FCM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure (F.R.C.P.) 56(c), First Correctional Medical, Inc., Dr. Niranjana Shah, and Dr. Jose A. Aramburo, Jr., (hereinafter the "FCM Defendants"), through their undersigned counsel, hereby request that this honorable Court grant defendants summary judgment as to plaintiff's state medical negligence claims because (1) plaintiff has failed to satisfy the requirements of 18 *Del. C.* § 6853(e) and (2) plaintiff has failed to satisfy the requirements of F.R.C.P. 26 (a)(2)(B).  In support of the FCM Defendants' position that they are entitled to summary judgment as a matter of law, the FCM Defendants offer the following:

**I.    Background**

1.    First Correctional Medical - Delaware, LLC, (hereinafter "FCM"), contracted with the State of Delaware Department of Correction to provide health care to the Delaware prison system from July 1, 2002 - June 30, 2005.

2.    Defendants Niranjana Shah, M.D., and Jose A. Aramburo M.D., were employees of FCM at all times relevant to this lawsuit.

3.      Louis W. Chance, Jr., (hereinafter "Decedent"), was incarcerated in April 2003 in the

Delaware correctional system for a fourth driving under the influence violation.  While incarcerated,

Decedent served at the Webb Correctional Institution, (hereinafter "WCI").

4.      Upon his intake[1] to medical, and throughout his numerous medical visits, Decedent

consistently denied being HIV positive or having any of the risk factors associated with HIV disease,

such as intravenous drug use[2] or sexually transmitted diseases[3].  While incarcerated, Decedent did

not avail himself of the no-cost, but non-mandatory[4], HIV test offered by the State of Delaware

Department of Correction.

5.      On September 8, 2003, Decedent presented to the infirmary at WCI for complaints

of a bad headache. Decedent again denied that he had HIV.  Decedent was treated that day and every

day through September 23, 2003, by nurses, medical doctors, physician's assistants, mental health

---

[1]At the commencement of a period of incarceration, an inmate is assessed medically by an employee (usually a registered nurse) of the medical provider at the prison.  This physical assessment is referred to as "intake" and includes current vital signs, discussions about the inmate's medical history (including intravenous drug use, alcohol abuse, narcotic abuse, sexually transmitted disease history, and exposure to HIV), daily habits, current illnesses/diseases, medications, mental health status and dental problems.

[2]At the deposition of Louis W. Chance, III, it was learned that Decedent used heroin on a daily basis.  See Deposition of Louis W. Chance, III, p. 44, ll. 8 - 25, relevant portion attached as Exhibit 1.

[3]Decedent's Saint Francis Hospital medical records, obtained via subpoena, indicate that Decedent treated at Saint Francis Hospital, in Wilmington, for the sexually transmitted disease epididymitis (inflammation of the long, tightly coiled tube, the epididymis, that carries sperm from the testicle to the spermatic duct; www.webmd.com) less than one year prior to his incarceration.  Decedent did not disclose this information to health care professionals at First Correctional Medical at intake or any time thereafter.

[4]Delaware law prevents the Department of Correction from requiring HIV testing for inmates.

professionals, and a psychiatrist for his medical complaints. Various examinations, treatments and medications were performed/prescribed in an attempt to relieve Decedent's discomfort. See D.I. 54, pp. 6-11 for an in-depth review of plaintiff's medical history.

6.     On September 23, 2003, at 07:30, Decedent was found unresponsive in his cell. Decedent was immediately transported to Saint Francis hospital, where he expired a few hours later. The State Medical Examiner's autopsy indicates that Decedent's cause of death was Cryptococcal Meningitis[5], an HIV/AIDS related infection. It was not until the autopsy report findings were published, that FCM or its employees learned that the Decedent had AIDS.

**II.     Procedural History**

7.     On June 29, 2005, plaintiff, the Estate of Louis Chance, Jr., filed a lawsuit in this Court alleging medical malpractice and 42 U.S.C. § 1983 violations against the defendants. Specifically, plaintiff alleged medical negligence against Niranjana Shah, M.D., and Jose Aramburo, M.D. Plaintiff did not allege medical negligence against defendant First Correctional Medical.

8.     On January 25, 2006, this Court issued a Scheduling Order, D.I. 24, that contained requirements and deadlines agreed upon by the parties.

9.     Pursuant to the Scheduling Order, plaintiff's expert report deadline was October 31, 2006.

10.     On January 18, 2007, plaintiff filed Plaintiff's Rule 16.5 Request for Extension of Deadlines, D.I. 45, requesting that this Court grant a new scheduling order based upon the recent

---

[5]Cryptococcal Meningitis is "a life-threatening infection that can occur if there has been exposure to a fungus called Cryptococcus neoformas." htp://www.tthhivclinic.com/cryptomen.htm . The infection most commonly affects the brain, causing swelling of meninges (the lining of the brain) and the condition meningitis. *Id*.

publication of the Department of Justice Findings concerning the Delaware Department of Correction dated December 29, 2006.

11.     All defendants opposed plaintiff's request, D.I. 54, 55.  The matter is still pending before this Court.

12.     The discovery deadline for all parties and the defense expert deadline was February 28, 2007.  A two week trial is scheduled to commence July 30, 2007.

**III.    Legal Standards**

13.     F.R.C.P. 56 (c) states that summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, . . . show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

14.     "The plain language of Rule 56(c) 'mandates the entry of summary judgment, after adequate time for discovery and motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *McCusker v. Surgical Monitoring Assoc.*, 299 F.Supp.2d 396, 398 (D.Del. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

15.     Medical malpractice is a negligence action and is governed by state law.  *Lewis v. Foster*, No. Civ. A. 04-1350, 2006 WL 1875365 at *8, (D.Del. July 5, 2006).

16.     Pursuant to 18 *Del. C.*  § 6853 (e), "No liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death . . . ."

- 4 -

17.     In a medical negligence case, "the plaintiff bears the initial burden of presenting expert medical testimony on both the deviation from the applicable standard of care and causation." *McCusker*, 299 F.Supp.2d at 398 (citing *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991)).

18.     The production of expert testimony constitutes an essential element plaintiff's portion of a medical malpractice claim, and is an element upon which the plaintiff bears the burden of proof. *Id*.

19.     Pursuant to F.R.C.P. 26(a)2(B), the disclosure of expert testimony shall "be accompanied by a written report prepared and signed by the witness.  The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; . . . . the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years."

20.     F.R.C.P. 37(c)(1) mandates, "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, . . . any witness or information not so disclosed."

**IV.    Argument**

**A.    Plaintiff has failed to provide expert medical testimony regarding the FCM Defendants' alleged deviation from the applicable standard of care in the specific circumstances of this case or as to the causation of the death of the decedent, Louis W. Chance, Jr., and thus, failed to meet an essential burden of its medical negligence case.  Summary judgment for the defendants on the medical negligence claims is proper.**

21.     Plaintiff submitted a June 13, 2005, letter authored by Joe Goldenson, M.D., as well as Dr. Goldenson's curriculum vitae as part of its Rule 26(a)(1) disclosures.   The contents of the

- 5 -

letter are as follows:

> I have reviewed the Death Certificate, the St. Francis Hospital emergency room records from September 12, 2003[6], and the medical records from the Delaware Department of Corrections of Mr. Louis Chance. In my opinion, based on my training, experience and extensive knowledge of correctional medical care, the actions and inactions of First Correctional Medical staff fall well below the accepted standard of care in correctional facilities. Their failures to appropriately diagnose and treat Mr. Chance's cryptococcal meningitis lead to his death and constitute gross negligence and deliberate indifference to a serious medical need.

Plaintiff's Production Bate Stamped 0001-0005, Attached as Exhibit 2.

22.    In various conversations between the parties as well as plaintiff's answer to # 57 of the FCM Defendants' Interrogatories, counsel for the plaintiff has indicated that the June 13, 2005 letter and curriculum vitae constituted plaintiff's expert disclosures. At no time after the initial disclosures was this letter supplemented by any further report or information.

23.    The June 13, 2005 letter of Joe Goldenson, M.D., does not constitute an expert report because it does not meet the requirements of 18 *Del. C.* § 6853 (e). In the June 13, 2005 letter, Dr. Goldenson makes the broad statement, "the actions and inactions of First Correctional Medical staff fall well below the accepted standard of care in correctional facilities." See Exhibit 2, 0001. Plaintiff has not presented any expert medical testimony regarding what the applicable standard of care in the specific circumstances of this case is nor has plaintiff presented any expert medical testimony as to any alleged deviation from the applicable standard of care. 18 *Del. C.* § 6853 (e).

24.    The nebulous allegations continue as Dr. Goldenson states, "Their failures to appropriately diagnose and treat Mr. Chance's cryptococcal meningitis lead to his death and

---

[6]The Decedent did not receive treatment from St. Francis Hospital on September 12, 2003. One can only surmise that Joe Goldenson, M.D., was referring to the St. Francis Hospital records from September 23, 2003.

constitute gross negligence and deliberate indifference to a serious medical need." See Exhibit 2, 0001. While this statement might rise to a basic allegation of causation as to the death of the decedent, it hardly constitutes an expert medical opinion that can be defended as it is so ambiguous. 18 *Del. C.* § 6853 (e).

25.    Dr. Goldenson's June 13, 2005 letter essentially contains two extremely generalized sentences which purport to constitute an expert medical opinion of negligence against the defendants. Not only has the plaintiff not presented any expert medical testimony as to the appropriate standard of care or any alleged deviation from it, but plaintiff completely fails to cite any actions of the named defendants Niranjana Shah, M.D., or Jose Aramburo, M.D. 18 *Del. C.* § 6853 (e). The June 13, 2005 letter is nothing more than bald accusations that have not been properly explicated or substantiated by concrete evidence or fact. Delaware law does not require the defendant in a medical negligence case to consult medical experts as to the appropriate standard of care in a particular instance and then scour the medical records of the injured party to determine if and where there was a breach of duty - that is the plaintiff's burden.

26.    Delaware law requires that a plaintiff bear the initial burden of presenting expert medical testimony regarding the deviation from the standard of care and causation. *McCusker*, 299 F.Supp.2d at 398. Where a plaintiff has failed to provide expert medical testimony as to the alleged deviation from the applicable standard of care, this Court has held that "there is lack of necessary proof concerning an essential element . . ., rendering all other facts immaterial." *Id*. The defendants remedy is dismissal of the claim. *Id*. Plaintiff has failed to provide the requisite expert medical testimony in its case of medical negligence against the defendants Niranjana Shah, M.D., and Jose Aramburo, M.D. Plaintiff has failed to prove an essential element of its case against Niranjana Shah,

M.D., and Jose Aramburo, M.D., and the medical negligence claims must be dismissed as a matter of Delaware law.  *Id*.

>    **B.     The letter of Plaintiff's expert, Joe Goldenson, M.D., failed to comply with F.R.C.P. 26(a)2(B) expert disclosure requirements, the failure was not harmless, and thus plaintiff is precluded from presenting the testimony of Joe Goldenson, M.D. at trial.**

27.     The June 13, 2005 letter of Joe Goldenson, M.D., does not satisfy the requirements of F.R.C.P. 26(a)2(B).  F.R.C.P. 26(a)2(B) requires that the disclosure of expert testimony contain a report with a "*complete statement* of all opinions to be expressed and the *basis and reasons therefore*".  *Id*. (emphasis added).  As argued in ¶¶ 22-26 above, plaintiff has not provided an expert report with a complete statement of all opinions to be expressed.  The June 13, 2005 letter does not provide a basis or any reasons for Dr. Goldenson's opinion that the defendants were medically negligent.

28.     In *Honeywell International v. Universal Avionics Systems Corp.*, 347 F. Supp. 2d 129, 135 (D. Del. 2004), this Court held that any testimony given by Honeywell's expert on the doctrine of equivalents would be limited to the "conclusory allegations of infringement"made in the expert report.  This Court went on to hold that such conclusory testimony would be insufficient for the purpose of establishing infringement under the doctrine of equivalents, citing specifically the reports "lack of particularized testimony and linking argument", and precluded the expert from testifying on that issue.  *Id*.

29.     While this case does not contain allegations of infringement, the analysis is the same. In *Honeywell*, the plaintiff's expert did not cite the basis and reasons for his opinion of infringement under the doctrine of equivalents theory in his expert report and the Court held that the report failed

to satisfy F.R.C.P. 26 (a)2(B) as to that issue. In this case, the plaintiff's expert, Joe Goldenson, M.D., has failed to cite the basis and reasons for his opinion of medical negligence in his June 13, 2005 letter and thus fails to satisfy F.R.C.P. 26(a)2(B)[7]. Furthermore, like Honeywell's expert report, the June 13, 2005 letter lacks "particularized testimony and linking argument". In *Honeywell*, the defendants' remedy was preclusion of the testimony of Honeywell's expert on the doctrine of equivalents. *Id*. See also F.R.C.P. 37(c)(1). On the same grounds, Joe Goldenson, M.D., should be precluded from testifying about medical negligence in this case.

30.    Unlike *Honeywell*, plaintiff in this case must present expert testimony to even assert a medical negligence claim at trial. 18 *Del. C.* § 6853 (e). So while preclusion of Honeywell's expert testimony on the doctrine of equivalents did not prevent Honeywell from presenting its infringement case, preclusion of Joe Goldenson, M.D., will prevent plaintiff from presenting its medical negligence claim. Summary judgment is proper where plaintiff cannot establish an essential element of its case. *McCusker*, 299 F.Supp.2d at 398.

**VII.    Conclusion**

For the reasons set forth above, the FCM Defendants respectfully request this Court grant their Motion for Summary Judgment as to plaintiff's medical negligence claims.

---

[7]In addition to the opinion failures of the June 13, 2005 letter, neither Joe Goldenson, M.D.'s June 13, 2005 letter or curriculum vitae states "the compensation to be paid for the study and testimony" or "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." F.R.C.P. 26(a)2(B).

**McCULLOUGH & McKENTY, P.A.**

/s/ Dana Spring Monzo
Daniel L. McKenty, Del. Bar No. 2689
Dana M. Spring, Del. Bar No. 4605
1225 N. King Street, Suite 1100
P.O. Box 397
Wilmington, DE 19899-0397
(302) 655-6749
Attorneys for First Correctional Medical, Niranjana
Shah, M.D. and Jose Aramburo, M.D.

Dated: March 14, 2007

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ESTATE OF LOUIS W. CHANCE** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs** | ) | **C.A. No. 05-449-SLR** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FIRST CORRECTIONAL MEDICAL** | ) | **JURY OF 12 DEMANDED** |
| **LLC, DR. NIRANJANA SHAH, AND** | ) | |
| **DR. JOSE ARAMBURO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

And now this _____ day of _____, 2007 having considered

*FCM Defendants' Motion for Summary Judgment* and any opposition thereto,

**IT IS  HEREBY ORDERED** that *FCM Defendants' Motion for Summary Judgment* is

**GRANTED** and the medical negligence claims against Niranjana Shah, M.D., and Jose Aramburo,

M.D., are dismissed with prejudice.


_____
                                                                                J.

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ESTATE OF LOUIS W. CHANCE** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs** | ) | **C.A. No. 05-449-SLR** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FIRST CORRECTIONAL MEDICAL** | ) | **JURY OF 12 DEMANDED** |
| **LLC, DR. NIRANJANA SHAH, AND** | ) | |
| **DR. JOSE ARAMBURO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

I certify that, on this date, one copy of the attached *FCM Defendants' Motion for Summary Judgment* was electronically served upon the following:

Jeffrey K. Bartels, Esquire.
401 South Maryland Avenue
Wilmington, DE 19804

Kenneth W. Richmond, Esq.
2019 Walnut Street
Philadelphia, PA  19103

Marc Niedzielski, Esquire
Department of Justice
Carvel State Office Building
820 N. French St.
Wilmington, DE 19801

**McCULLOUGH & McKENTY, P.A.**

/s/ Dana Spring Monzo
Daniel L. McKenty, Del. Bar No. 2689
Dana M. Spring, Del. Bar No. 4605
1225 N. King Street, Suite 1100
P.O. Box 397
Wilmington, DE 19899-0397
(302) 655-6749
Attorneys for First Correctional Medical, Niranjana
Shah, M.D. and Jose Aramburo, M.D.

Dated: March 14, 2007