IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ESTATE OF LOUIS W. CHANCE, JR., | : | |
| by Amanda Humphreys and Louis | : | |
| Chance, III, Personal Representatives, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 05-449-SLR |
| | : | |
| FIRST CORRECTIONAL MEDICAL | : | |
| INC., et al., | : | |
| Defendants. | : | |

## DEFENDANTS TALLEY'S AND TAYLOR'S OPENING BRIEF

## IN SUPPORT

## OF THEIR MOTION FOR SUMMARY JUDGMENT

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

Marc P. Niedzielski (# 2616)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)  577-8400

DATED:  March 15, 2007

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................3

NATURE AND STAGE OF THE PROCEEDINGS ..............................................4

SUMMARY OF THE ARGUMENT ....................................................................6

STATEMENT OF THE FACTS ...........................................................................7

## **ARGUMENT I.**

DEFENDANTS TALLEY AND TAYLOR ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS THERE IS NO EVIDENCE THAT WOULD SUPPORT AN EIGHTH AMENDMENT MEDICAL CLAIM AGAINST THEM. ...........................13

CONCLUSION ..................................................................................................17

## TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 13

*Hampton v. Borough of Tinton Falls Police Dept.*,
98 F.3d 107 (3d Cir. 1996) .......................................................................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ..................................................................................................... 14

*Spruill v. Gillis,* 372 f.3d 218 (3d Cir. 2004) ........................................................... 15, 16

*Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989) ........................................ 16

## Other Authorities

42 U.S.C. § 1983 ............................................................................................................ 4

Fed. R. Civ. P. 56(c) ............................................................................................... 13, 15

## NATURE AND STAGE OF THE PROCEEDINGS

On June 29, 2005, this matter was commenced by filing a complaint under 42 USC § 1983 and state law claims for medical malpractice regarding plaintiff's decedent Louis W. Chance, Jr.  At the same time, a motion for admission to appear *pro hac vice* was made on behalf of Kenneth W. Richmond, Esquire.  (D.I. 1-2)

On August 17, 2005, the *pro hac vice* motion for Mr. Richmond was granted.

On September 16, 2005, an amended complaint was filed that added defendants Stan Taylor and Joyce Talley.  (D.I. 3)

On January 25, 2006, the Court entered the present scheduling order that had been proposed by the parties. (D.I. 24)  Thereafter, the parties engaged in discovery.

On January 18, 2007, plaintiff filed a motion to extend the time to complete discovery and a motion to compel discovery regarding an NCCHC audit conducted in 2005. That matter has been briefed and is pending decision by the Court.

On January 24, 2007, defendants Talley and Taylor produced and gave access to the parties of thousands of pages of requested documents. (D.I.50) (Response to Plaintiff's 1st request for production attached)

On February 5, 2007, defendants Talley and Taylor responded to plaintiffs' 2nd Request for Documents.  (D.I. 54)

On February 15, 2007, plaintiffs filed their 2nd motion to compel discovery. Specifically, plaintiffs seeks all the documents that the State of Delaware produced to the U.S. Department of Justice pursuant to 42 USC § 1997, et seq. (CRIPA) That matter has been briefed and is pending decision by the Court.

This is defendants Talley's and Taylor's Opening Brief in support of the concurrently filed motion for summary judgment.

Case 1:05-cv-00449-SLR    Document 66    Filed 03/15/2007    Page 5 of 18

## **SUMMARY OF THE ARGUMENT**

### **I.**

The record is undisputed that plaintiff's decedent Louis Chance, Jr. received daily medical treatment from nurses, physician's assistants and physicians from the time he first complained of a headache on September 8, 2003 to the day he was taken by ambulance to St. Francis Hospital where he unfortunately died on September 23, 2003.

The record is equally undisputed that neither Joyce Talley nor Stan Taylor had any involvement in decedent's medical care nor is there any evidence that they in any way interfered or delayed that medical care.

## STATEMENT OF THE FACTS

The record in this case reveals that in April 2003, plaintiff's decedent, Louis Chance, Jr., [hereafter "Chance", "inmate" or "decedent"] was committed to the custody of the Department of Correction by the Superior Court for New Castle County for the felony crime of driving under the influence of drugs or alcohol (4th offense).

Decedent was assigned to the Howard R. Young Correctional Institution ["HRYCI"] for intake purposes.

On May 14, 2003, he was interviewed by a nurse for the standard intake screening. (Plaintiff's production Bates Stamped 0066-67) During that screening, Chance denied any intravenous drug use[1], exposure to HIV and denied any sexually transmitted diseases[2]. On that same day, plaintiff's decedent was provided with educational materials on HIV, Hepatitis and personal hygiene. Chance denied drug use. (Plaintiff's production Bates Stamped 0125, 0103)

On May 16, 2003, Chance was examined and counseled regarding his recent test coming back as positive for Hepatitis C. Chance stated that he had a history of liver disease and was unable to provide the doctor with any additional information. The inmate was scheduled for and received vaccinations for

---

[1] Plaintiff Louis Chance, III, (decedent's son) testified on April 27, 2006: "How did I learn about heroin? My father used to use…Q. Well, you became familiar with heroin from your father; is that a fair statement? A. Yes, that's a fair statement. *** Q. How would you father use heroin? A. He would snort it and I think he would inject once in a while. Deposition Transcript at 44 - 45.

[2] Unknown to the defendants, decedent was in St. Francis Hospital for a sexually transmitted disease epididymitis from March 30 to April 2, 2002.

Hepatitis A and B, but was unsuitable for interferon treatment. (Plaintiff's production Bates Stamped 0103, 0078)

On July 16, 2003, plaintiff's decedent was transferred to the Webb Correctional Facility which is located at Prices Corner, suburban Wilmington. The Webb facility is used by the Department of Correction for inmates that are substance abusers that are serving a sentence.

On September 8, 2003, decedent filled out a sick call slip complaining of a headache and was seen, examined and assessed by the nurse. (Plaintiff's production Bates Stamped 0122) The decedent told the nurse that he had a history of migraines. (Plaintiff's production Bates Stamped 0095)

The next day decedent was seen by Dr. M. Yu, M.D. who examined and proscribed Motrin at 800mg for 5 days and prescribed hydrocortisone lotion for the rash on his face. (Plaintiff's production Bates Stamped 0129, 010)

On September 11, 2003, after being examined by the nurse at Webb, Chance was transferred to receive medical treatment at the infirmary within the HRYCI as he had taken 15 pills of 800 mg of Motrin at one time. At HRYCI, the inmate was seen and examined by a Physician's Assistant [hereafter "PA"]who found that his vital signs and neurological functions were all normal and directed his return to Webb. (Plaintiff's production Bates Stamped 0100, 0130)

On September 12, 2003, after being called a number of times by the nurse at Webb, the inmate refused to come to the dispensary for his pain medications. On the same day the inmate was transferred to the infirmary at HRYCI for

observation for possible overdose of medication. During this period the inmate was urinating on the floor, banging on the door and hollering. (Plaintiff's production Bates Stamped 0090)

On September 13, 2003, the inmate was assessed by the Nurses who found his vital signs normal and that he complained of migraines using vulgar language and hollering. Subsequently, he was seen and evaluated by a mental health counselor who placed him on PCO II which is protective surveillance to protect him from himself. (Plaintiff's production Bates Stamped 0090) Later that day the inmate became violent and threatened to strike a nurse. Dr. Jose Aramburo ordered sedatives for Chance who thereafter was resting quietly and sleeping. (Plaintiff's production Bates Stamped 0131, 0089)

On September 14, 2003, Chance was still on PCO II watch status, but interacted normally with the medical personnel. The inmate continued to complain of headaches and his vital signs were normal. *Id*

On September 15, 2003, Chance was examined by a Psychiatrist and later by a PA. The Psychiatrist discontinued the inmate's PCO II status. (Plaintiff's production Bates Stamped 0086) The PA prescribed 600 mg of Motrin twice a day for three days. (Plaintiff's production Bates Stamped 0085)

On September 16, 2003, Chance was assessed by two nurses who indicated that he was alert with no further complaints. (Plaintiff's production Bates Stamped 0085, 0086) The inmate was also seen by and fully examined by Dr. N. Shah, who ordered a battery of laboratory tests. (Plaintiff's production Bates Stamped

0108)

On September 17, 2003, Chance was seen by a number of healthcare providers, including two nurses and a PA. The inmate continued to complain of headache, but without apparent distress. On that same day, his medications were changed to include caffeine. Chance reported that the combination had relieved his headache. (Plaintiff's production Bates Stamped 0184)

On September 17, 2003 at 6:52 P.M., Chance was returned to Webb from the infirmary at HRYCI.

On September 18, 2003, Chance was seen by the nurse at Webb for blood work. The inmate was called to come down to the dispensary for medications, but he refused. (Plaintiff's production Bates Stamped 0109)

On September 19, 2003, Chance was seen by a mental health counselor at the request of medical regarding his complaints of headache. After an examination, the counselor suggested possible nicotine withdrawal and referred his care back to medical. (Plaintiff's production Bates Stamped 0111)

On September 21, 2003 at around midnight, the inmate was transported to the infirmary at HRYCI with complaints of severe abdominal pain. (Plaintiff's production Bates Stamped 0072) He was interviewed with the standard intake screening form and again he denied any intravenous drug use, exposure to HIV and denied any sexually transmitted diseases. (Plaintiff's production Bates Stamped 0062-0063)

After Chance was admitted to the infirmary, he told the nurse that he had

pain all over his body, but could not direct the nurse to any specific location of the pain. He was examined and assessed by the nurse. Later that same day, Chance was examined and assessed by another nurse who found the inmate alert, calm and cooperative. His vital signs were normal. (Plaintiff's production Bates Stamped 0074)

Chance was then examined by a PA who also found that his vital signs were normal and prescribed Maalox and a clear fluid diet (Plaintiff's production Bates Stamped 0074 -0073)

On September 22, 2003, Chance was seen in the infirmary by a PA. The PA examined the inmate who complained of headache, stomach and chest pain. The PA noted that Chance was in no apparent distress and continued his medications and Maalox. (Plaintiff's production Bates Stamped 0071)

Later that morning, Chance was seen by an optometrist who performed a funduscope examination of his eyes. The examination revealed papilliedema which is swelling of the optic disc. The optometrist recommended a CT scan to rule out a space occupying lesion. (Plaintiff's production Bates Stamped 0069) Shortly thereafter, defendant Dr. Shah ordered an MRI to be performed at St. Francis Hospital on an urgent basis. *Id.*

On September 23, 2003, in the early morning, Chance was found by a nurse to be non-responsive and summoned the doctor. They performed an examination and started emergency procedures that included calling 911 for an emergency transport to St. Francis Hospital. (Plaintiff's production Bates Stamped 0071,

0070)

Chance was transported to the hospital where emergency measures were performed, but he was pronounced dead at 9:52 A.M.  (Plaintiff's production Bates Stamped 0152)

The postmortem examination by Deputy Chief Medical Examiner Adrienne Perlman, M.D., revealed that decedent died from a very rare fungal infection of the brain which was enabled by undiagnosed HIV/AIDS. (Plaintiff's production Bates Stamped 0036-40)   The death certificate classified the death as natural. (Plaintiff's production Bates Stamped 0035)

## **ARGUMENT I.**

DEFENDANTS TALLEY AND TAYLOR ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS THERE IS NO EVIDENCE THAT WOULD SUPPORT AN EIGHTH AMENDMENT MEDICAL CARE CLAIM AGAINST THEM.

### **(a)     Introduction:**

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is one that "may reasonably be resolved in favor of either Party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986). The moving party bears the initial burden of demonstrating the absence of material issues of fact. *Celotex Corp.*, at 323. However, the moving party need not support its motion with affidavits or other documents disproving the nonmoving party's claim, but need only "show - - that is point out to the district court - - that there is an absence of evidence to support the nonmoving party's case." *Id.*, at 325. The nonmoving party must go beyond the pleadings and through affidavits or other evidence demonstrate the existence of a genuine issue of material fact. *Id.*, at 314. The district court is

required to construe the evidentiary record so as to give the nonmoving party reasonable factual inferences. *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996). Summary judgment should be granted if the court finds, in consideration of all of the evidence, that no reasonable trier of fact could find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

For reasons that follow, Joyce Talley and Stan Taylor are entitled to summary judgment in this 42 U.S.C. § 1983 action alleging a violation of the decedent's Eighth Amendment rights.

### (b) The claim against Joyce Talley

The single allegation against Joyce Talley in the amended complaint is that "she assumed a duty to insure efficient and effective health care to decedent Chance, and in spite of numerous inmate complaints…under the contract [she] remained deliberately indifferent to the medical plight of…decedent Chance in particular by failing to order or require inmates to receive adequate, needed medical care…" (Amended Complaint ¶ 28; D.I. 3)  Plaintiff does not contend that Joyce Talley in any way interfered with the medical care being provided Louis Chance.

The statement of facts contains the undisputed record of the medical care delivered to plaintiff's decedent.  From September 8, 2003, when decedent first complained of a headache to September 23, 2003, when he was brought by ambulance to the St. Francis Hospital, decedent was under almost constant

medical care. He was transferred from the Webb facility to the Infirmary at the HRYCI three times and with the single exception of September 10, 2003, he was seen and treated by nurses, physician's assistants, and physicians. There is no evidence that he was denied any medical care, rather plaintiff suggests that maybe the decedent would have survived if he had been sent to the St. Francis Hospital earlier.

Joyce Talley is the Chief of the Bureau of Management Services within the Department of Correction. There is not a single piece of evidence that she had any connection with the medical care provided Louis Chance, and it is undisputed that decedent was provided with constant regular medical care.

> Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference. If a prisoner is under the care of medical experts…, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibilities for various aspects of inmate life among, guards, administrators, physicians and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive **not** to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.

*Spruill v. Gillis,* 372 F.3d 218, 236 (3d. Cir. 2004) (emphasis in original).

Joyce Talley is entitled to summary judgment pursuant to Fed.R.Civ.P. 56.

**(c) The claim against Stan Taylor**

The allegations against Stan Taylor in the amended complaint are that as a direct result of "cost containment practices" a timely MRI was not ordered for the decedent, and these same cost containment practices resulted in inadequate medical staffing, inadequate training and a lack of transport to off site medical facilities. (Amended Complaint, ¶¶ 26, 27)   Additionally, plaintiff alleges that the failure to provide required diagnostic care was the result of a contractual agreement[3] between Taylor and FCM.

The plaintiff has been provided thousands of documents and has deposed both moving defendants and other Department personnel and cannot point to any evidence that Stan Taylor interfered or hindered the medical care being provided to Louis Chance by fully licensed health care providers.  Additionally, none of the physicians involved in decedent's care provided any evidence that would support such a claim.  While it is truly unfortunate that the inmate died from his rare fungal infection of the brain, it is true that he was cared for on an almost daily basis by the nurses, physician's assistants and physicians.  As set out above, Stan Taylor is entitled to summary judgment under the circuit precedent of *Spruill v. Gillis, supra*.

---

[3] There is no contract between Stan Taylor and FCM.  There was a 2002 health services contract between FCM –Delaware, LLC and the Department of Correction which was executed by Stan Taylor in his official capacity.  Of course, official capacity suits for retrospective relief against state officials are barred by the Eleventh Amendment and they are not persons for purposes of 42 U.S.C. §1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989).

## **CONCLUSION**

For the above reasons, defendants Joyce Talley and Stan Taylor are entitled to summary judgment as there is no evidence that they interfered with the plaintiff's decedent's medical care.

        Respectfully submitted,

        STATE OF DELAWARE
        DEPARTMENT OF JUSTICE

        /s/ Marc P. Niedzielski
        Marc P. Niedzielski, I.D. #2616
        Deputy Attorney General
        Carvel State Office Building
        820 N. French Street, 6th Floor
        Wilmington, DE 19801
        (302) 577-8400
        Attorney for Defendants Taylor and Talley

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on March 15, 2007, he caused the **Defendants Talley's and Taylor's Opening Brief in Support of their Motion for Summary Judgment** to be served on the following persons via electronic mail:

**NAME AND ADDRESS OF RECIPIENT(S):**

| | |
|---|---|
| Kenneth W. Richmond, Esq.<br>Pro Hac Vice<br>kennyrichmond@comcast.net | Dana Spring Monzo, Esq.<br>McCullough & McKenty, P.A.<br>1225 North King Street, Suite 1100<br>P.O. Box 397<br>Wilmington, DE 19899-0397<br>dmonzo@mccmck.com |
| Jeffrey K. Bartels, Esquire<br>401 South Maryland Avenue<br>Wilmington, DE 19804<br>outlaw1@rcn.com | |

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Marc P. Niedzielski
Marc P. Niedzielski, I.D. #2616
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendants Taylor and Talley