IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Estate of Louis W. Chance, Jr.
by:  Amanda Humphreys and
Louis Chance, III, Personal
Representatives
506 W. Summit Avenue
Wilmington, Delaware 19804

        Plaintiff

    v

First Correctional Medical-Delaware,
LLC.  et al.                                                                Civil Action No. 05-449 (SLR)

        Defendant

**PLAINTIFF'S RESPONSE  BRIEF CONTRA
MOTION OF TALLEY AND TAYLOR
FOR SUMMARY JUDGMENT**

        **Attorneys for Plaintiff**

        Jeffrey K. Bartels, Esquire
        Kenneth W. Richmond *pro hac vice*
        401 S. Maryland Avenue
        Wilmington, DE 19804

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………… 3

NATURE AND STAGE OF PROCEEDINGS………………………….3

SUMMARY OF ARGUMENT……………………………………….5

## ARGUMENT

### I

THE PLAINTIFF MOVED IN A TIMELY MANNER UNDER THE RULES FOR A MODIFICATION OF THE SCHEDULING ORDER DUE TO THE PUBLIC DISCLOSURE OF A SUBSTANTIAL BODY OF EVIDENCE THAT HAD NOT BEEN PREVIOUSLY DISCLOSED UNDER RULE 26, THEREFORE A MOTION FOR SUMMARY JUDGMENT IS PREMATURE.

### II

THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT FOR THE REASON THAT UNDER 11 DEL. C. § 6157(13) THEY WERE CHARGED WITH ADMINISTERING THE MEDICAL/TREATMENT SERVICES CONTRACT, OR APPOINTING A DESIGNEE TO ADMINISTER THE MEDICAL/TREATMENT CONTRACT, AND PLAINTIFF'S EVIDENCE ADDUCED THUS FAR UNEQUIVOCALLY ESTABLISHES THAT THE DECEDENT HAD A SERIOUS MEDICAL NEED AND IS SUFFICIENT FOR A FACT FINDER TO CONCLUDE THAT THE DEFENDANTS WERE RECKLESSLY INDIFFERENT TO A SUBSTANTIAL RISK OF HARM TO INMATES FROM THE MEDICAL VENDORS WHO WITHHELD URGENTLY REQUIRED TREATMENT.

CONCLUSION…………………………………………………………

## TABLE OF AUTHORITIES

**Benjamin Doe v. Abington Friends Sch.,** 2007 U.S. App. LEXIS 5945 (**March 15, 2007**)……………………………………….6

**Chincello v. Fenton,** 805 F.2d 126 (3d Cir. 1986)…………………………12

**Estelle v. Gamble,** 429 U.S. 97, 105 (1976)……………………………….12

**Farmer v. Brennan**, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)……………………………………………………………………...11,12

**Rhode v.Dellarciprete,** 845 F.2d 1195, 1207 (3d Cir. 1988)…………….12

**Rouse v. Plantier,** 182 F.3d 192  (1999)………………………….…...8

## Other Authorities

RRCP 56……………………………………………………………..6.7.8


CONCLUSION…………………………………………………………12

## NATURE AND STAGE OF THE PROCEEDINGS

This is an action brought pursuant to 42 U.S.C. §1983 alleging that the decedent died due to an unconstitutional denial of medical treatment while he underwent a six month incarceration in the Delaware Department of Correction for a fourth DUI.[1]

---

[1] The defendants understate or mischaracterize the facts and legible medical chart entries as the actual testimony appended to the plaintiff's reply to the FCM Motion for Summary Judgment will reveal.  However, an item by item denial addressing these liberal excursions are not essential for disposition of this motion.

On January 25, 2006, the Court entered a scheduling order that provided for the completion of discovery by February 28, 2007.

On December 29, 2006 the United States Department of Justice published findings related to the unconstitutionality of the medical care provided by the Delaware Department of Correction referencing evidence consisting of 26,000 items or documents that were not disclosed or produced by defendants. Following a discussion among counsel, a formal 2nd Request for Production was served upon moving defendants on January 4, 2007.

On December 29, 2006 defendant Taylor signed what purports to be an agreement relating to necessary improvements in procedure and quality of the medical care after having denied during sworn deposition testimony on November that any investigation of the Department of Correction had taken place.

The evidence referenced includes conclusions of experts in medicine and prison medical care and addresses a period commencing in 2002 through the date of the findings, a period covering the incarceration of the plaintiff's decedent.

The evidence became the subject of two pending motions; the first filed on January 18, 2007 under Rule 16.5 for an extension of the discovery deadlines, and the second, filed on February 15, 2007 to compel after defendants Taylor and Talley objected to the production of the evidence submitted to the Department of Justice.

4

The Court's Scheduling Order provides for a March 15, 2007 deadline for filing Summary Judgment Motions.

### SUMMARY OF THE ARGUMENT

THE PLAINTIFF MOVED IN A TIMELY MANNER UNDER THE RULES FOR A MODIFICATION OF THE SCHEDULING ORDER DUE TO THE PUBLIC DISCLOSURE OF A SUBSTANTIAL BODY OF EVIDENCE THAT HAD NOT BEEN PREVIOUSLY DISCLOSED UNDER RULE 26, THEREFORE A MOTION FOR SUMMARY JUDGMENT IS PREMATURE; NOTWITHSTANDING, THE PLAINTIFF HAS SUFFICIENT EVIDENCE FROM WHICH A FACT FINDER CAN REASONABLY CONCLUDE THAT THE MOVING DEFENDANTS WERE RECKLESSLY INDIFFERENT TO CONSTITUTIONALLY DEFICIENT MEDICAL CARE.

### ARGUMENT I

On the basis of facts stipulated to by the defendant Taylor, the Department of Justice investigators on December 29, 2006 stated in writing that:

> "Our investigation revealed that the medical care provided at the facilities falls below the standard of care constitutionally required in the following areas, all of which were also identified by the State as deficient: intake; medication administration and management; nursing sick call; provider sick call; scheduling, tracking, and follow-up on outside consults; monitoring and treatment of communicable diseases; monitoring and treatment of chronic diseases; medical records documentation; scheduling; infirmary care; continuity of care following hospitalizations; grievances; and patient confidentiality. In addition, we found ***that care for patients with acute medical urgencies was also constitutionally inadequate.***" (emphasis added). (Appendix p. 4 )

At no time through the present have the moving defendants provided the reports of the medical experts or evidence referenced in the stipulations as

5

required by Rule 26, or in response to plaintiff's 2nd. Request for Production, despite the fact that the findings covered health care for inmates at least as far back as 2002, and certainly included the period and facilities complained of the in instant matter.

The plaintiff's ameded complaint asserting systemic violations of the Eighth Amendment and the reckless indifference to the violations has, to some still unknown extent, been substantiated by reports of medical experts whose reports were produced without objection for a civil rights investigation. Irrespective of the conclusions reached by the United States Department of Justice, those of the medical investigators are admissible and the facts upon which those conclusions are based are unquestionably probative on the issue of the moving defendants' studied self-insulation from the medical care in the Department of Correction. Until that evidence is produced, the defendants' motion is premature. Rule 56(f) states that,

> **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In **Benjamin Doe v. Abington Friends Sch.,** 2007 U.S. App. LEXIS 5945 (**March 15, 2007**) the Third Circuit most recently stated the following in a motion under Rule 56,

> "B. Analysis
> As any practicing attorney can attest, federal litigation revolves around the generous and wide-ranging discovery provided by the Federal Rules of Civil Procedure…. These mechanisms were made necessary by the revolutionary switch

from "fact pleading" to "notice pleading" that was embodied by the modern rules. Stephen N. Subrin, *Fishing Expeditions Allowed: The Historical Background of the 1938 Federal Discovery Rules*, 39 B.C. L. REV. 691, 711 (1998) (quoting CHARLES E. CLARK, HANDBOOK OF THE LAW OF CODE PLEADING 41, 567-72 (2d ed. 1947) ("[Discovery mechanisms] are a necessary supplement to the system of simplified pleading.")); Charles E. Clark, *Fundamental Changes Effected by the New Federal Rules*, 15 TENN. L. REV. 551, 564-68 (1939); Edson R. Sunderland, *The New Federal Rules*, 45 W. VA. L.Q. 5, 10-12, 19-27 (1938). Rather than endless pleadings "served back and forth *ad infinitum* until the last issue of fact was tracked down and identified through the medium of declarations, bills, pleas, replications, rejoinders, surrejoinders, *etc.* " that had characterized common law litigation, *see* Abraham Rotwein, *Pleading and Practice Under the New Federal Rules -- A Survey and Comparison*, 8 BROOK. L. REV. 188, 195 (1939), modern civil procedure instead "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims,

As a result, it is well established that a court "is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record. the Supreme Court has explained that "[a]ny potential problem with . . . premature [summary judgment] motions can be adequately dealt with under Rule 56(f)." Therefore, if the non-moving party believes that additional discovery is necessary, the proper course is to file a motion pursuant to Rule 56(f). District courts usually grant properly filed Rule 56(f) motions as a matter of course." This is particularly so when there are discovery requests outstanding or relevant facts are under the control of the moving party. If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion. . And whatever its decision, it is "improper" for a district court to rule on summary judgment without first ruling on a pending Rule 56(f) motion."
(Internal citations omitted)

Two of the plaintiff's discovery motions are pending, together with a Rule 16.5 motion to extend the discovery deadlines, all of which were filed in a timely manner either immediately after the revelations of the United States Department of Justice or after the defendants objected to the production of evidence in response to a timely request.  Nevertheless, in an abundance of caution, the plaintiff has attached here an affidavit to satisfy any potential additional requirement posed by rulings on Rule 56(f).

**ARGUMENT  II**

THE PLAINTIFF HAS SUFFICIENT EVIDENCE FROM WHICH A FACT FINDER CAN REASONABLY CONCLUDE THAT THE MOVING DEFENDANTS WERE RECKLESSLY INDIFFERENT TO CONSTITUTIONALLY DEFICIENT MEDICAL CARE.

**Qualified Immunity**

In **Rouse v. Plantier,** 182 F.3d 192  (1999), the Third Circuit Court stated, "…when a defendant asserts the defense of qualified immunity, it is necessary to determine whether a reasonable official in the position of that defendant would have known that his or her actions were unconstitutional in light of the clearly established law and the information the official possessed…First, [a] District Court [should address] the specific conduct of each of the individual defendant in determining whether that particular defendant acted in an "objectively unreasonable" manner. The question is whether a reasonable public official would know that his or her specific conduct violated clearly established rights . . . . Thus, crucial to the resolution of any assertion of qualified immunity is a careful

examination of the record . . . to establish, for purposes of summary judgment, a detailed factual description of the actions of each individual defendant . . . ." (internal citations omitted).

## THE RECORD TO DATE

It is undisputed that defendants Taylor and Talley were each responsible for the contract compliance of the medical vendors to the Delaware Department of Corrections. In the deposition of Joyce Talley, November 28, 2006, commencing at page 5, she stated that she was responsible for budget requests for health care and commencing at page 7, lines 6 she was asked,

> Q. Beyond that, what other functions did you have for administering or overseeing or reviewing the contracts between medical vendors and the Department of Correction?
> A. Are you talking about just overseeing the contracts, we're not talking about the budget now.
> Q. Yes.
> A. I just want to make sure.
> Q. Yeah.
> A. I was responsible for overseeing that the healthcare services were being provided in compliance with the NCCHC standard and therefore be [sic] in compliance with the contract we had.

Page 19, commencing at line 1.

> Q. Wasn't FCM's profit dependent upon how much they spend on each inmate?
>
> A. I mean, I can only make the assumption that it would be, but I mean, I would not know how they created their proposal and how much by a profit margin there was, I wouldn't know that. So I'm not sure what would have driven their profit to go up or down.
>
> Q. Well, would it not have something to do with how much

>    they were spending per inmate?
>
> A. I mean, I can only assume that it would be.
>
> Q. All right. Well, was there any attempt on the part of the Medical Review Committee to determine whether or not they were spending an adequate amount on the care of inmates?
>
> A. I would say no. I mean, we did not go and look into how they spent their money.
>
> (Appendix pp. 21-22)

The Department of Justice findings are actually unsurprising viewed against the backdrop of this policy. There was conscious abandonment of any meaningful process for reviewing whether the care provided to inmates was constitutionally adequate by the defendants who left even medical grievance review in the hands of First Correctional Medical staff for resolution.

In depositions, Commissioner Taylor indicated that he relied upon the "certification" of the National Commission on Correctional Health Care as his evidence of compliance with constitutional requirements. The defendants have never produced or alluded to any certification for First Correctional Medical of Delaware. In addition, according to Taylor, an audit of the actual performance of First Correctional Medical Care came about only after outside medical vendors complained that they were not being paid (Dep. Stanley Taylor, Nov. 28, 2006, 70-71 Appendix p. 23) Moreover, according to the minutes of the monthly "Medical Review Committee" for July, 2003, Dr. Tammy Kastries, CEO of First Correctional Medical of Delaware, LLC, decried the *lack of cooperation of*

*Stanley Taylor in obtaining Medicaid for eligible inmates for needed outside care.* (Appendix, pp 25-26)  Under the reviewstructure described in the testimony and the minutes of the MRC, Stanley Taylor and Barbara Talley totally and intentionally insulated themselves from actual knowledge of inmate medical care despite growing financial distress of First Correctional Medical.  In spite of this and nineteen inmate deaths during 2003, the NCCHC did not appear until the fall of 2004, one year after the death in the present case, and then primarily because of FCM's problems paying its bills.[2]  The Medical Review Committee minutes from July, 2003 reflect a callous indifference to the grave potential for denial of needed care in the staffer, Kathy English's threat to withhold contract payments even as FCM incurred arrearages to Kent General Hospital amounting to $800,000.00. (Appendix , p. 29)   A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. **Farmer v. Brennan**, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, (supra) 429 U.S. at 104-05.

    The requisite involvement of the moving defendants can be shown by actual participation in the misconduct, knowledge of and acquiescence

---

[2] During his deposition, defendant Taylor was asked repeatedly about the number of inmate deaths that occurred during 2003 and he testified that there were two, maybe three. (Appendix, p. 30  Deposition, p. 59  lines 1-25. After the Wilmington News Journal pointed out that there were actually 19 inmate deaths during 2003, (Appendix 31, pp. 2-4 Mr. Taylor sent an errata sheet (Appendix  p. 34) fancifully thinking that the interrogator was addressing *suicides?*

in the misconduct or circumstances where inaction sends a message of approval for the misconduct. **Rhode v.Dellarciprete,** 845 F.2d 1195, 1207 (3d Cir. 1988); **Chincello v. Fenton,** 805 F.2d 126 (3d Cir. 1986). Either actual intent or recklessness will afford an adequate basis to show deliberate indifference. **Estelle v. Gamble,** 429 U.S. 97, 105 (1976). "the official [must] know . . . of and disregard . . . an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." **Farmer v. Brennan,** 511 U.S. at 837. While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that a[n]…official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

Even before the collection of evidence upon which the Department of Justice relied is produced, a fact finder could reasonably infer from the existing evidence that deliberate indifference in violation of the constitution has been established.

**CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Motion for Summary Judgment be denied.

          Respectfully submitted,

/s/_____
    Jeffrey K. Bartels, Esq.
    Kenneth W. Richmond, Esq. *pro hac*
    401 South Maryland Ave.
    Wilmington, DE. 19804

## CERTIFICATION OF SERVICE

    I, Kenneth W. Richmond, Esq., pro hac vice counsel for the Plaintiff, hereby certify that on Thursday, February 11, 2007 a copy of the foregoing Reply to Defendant's Taylor and Talley's Opposition to Rule 16.5 Extension was served by e-mail upon Marc Neidzielski, Esquire, Department of Justice, Carvel State Office Building, 820 N. French Street, Wilmington, DE, 19801, and Daniel L. McKenty 1225 N. King Street, Suite 1100, Wilmington, DE, 19899

Date:   March 26, 2007

                    /s/_____
                      Kenneth W. Richmond, Esq.
                      2019 Walnut Street
                      Philadelphia, PA  19103
                      215-523-9200
                      Pro Hac Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Estate of Louis W. Chance, Jr.<br>by: Amanda Humphreys and<br>Louis Chance, III, Personal<br>Representatives<br>506 W. Summit Avenue<br>Wilmington, Delaware 19804<br><br>    Plaintiff<br><br>  v<br><br>First Correctional Medical-Delaware,<br>LLC. et al.<br><br>    Defendant | Civil Action No. 05-449 (SLR) |

## **PLAINTIFF'S RULE 56(f) AFFIDAVIT**

  AND NOW, comes the plaintiff whose counsel below submits this affidavit pursuant to FRCP 56(f) in opposition to the motions of defendants for summary judgement and in support thereof avers as follows:

1. On December 31, 2006, the Wilmington News Journal published a column indicating that on December 29, 2006, the United States Department of Justice had found that the medical care provided to inmates by the Delaware Department of Corrections to be constitutionally inadequate and that Governor Minner and

Stanley Taylor had entered into an agreement with the civil rights division of the Department of Justice to address the medical care issues.

2.   On November 28, 2006, during the deposition of then Commissioner Stanley Taylor, he was asked specifically whether the Department of Correction had an investigation going on, other than the audit conducted by the NCCHC.

pg. 77, line 24

> Q. All right.  What I'm getting at is that apart from the audit that was performed by the NCCHC, the

pg. 78 lines-1-12

> Department of Correction had an investigation going on; is that correct?
> A. No.
> Q. They did not?
> A.  An investigation?
> Q.  Yeah, other than the report?
> A.  An investigation of what?
> Q.  The medical care that was being delivered by FCM?
> A.  No.

3.   On January 3, 2007, before the commencement of the deposition of Defendant Sitta Gombeh-Ali, a telephone status conference was held with Magistrate Judge Mary Pat Thynge at which time the news reports of the Department of Justice findings and the agreement of the Department of Corrections was briefly discussed among counsel.

4.   At the conclusion of the deposition, a discussion was undertaken among counsel addressing the Department of Correction Agreement and the expert medical reports referenced by the Department of Justice and whether they would

be produced voluntarily followed by an offer of the undersigned to produce law on the subject of federal evidential privilege claims.

5. Defense counsel was non-committal and mistakenly indicated that the period covered by the investigation, and the institutions did not relate to the plaintiff's decedent, the institutions he was treated at or the time period. On January 4, 2007, a 2nd. Request for Production was generated after e-mailing counsel 3rd. Circuit decisions on evidentiary privileges.

6. On January 18, 2007 following an analysis of the Agreement entered into by Stanley Taylor and the Department of Justice, together with references to stipulations and voluntary submissions of an extensive body of evidence upon which the Department of Justice based its findings of unconstitutionality for the medical care, plaintiff requested a Rule 16.5 extension. The findings of the Department of Justice made reference to expert medical investigators who had, unlike the plaintiff's expert, *unrestricted access* to the facilities, the medical records, the staff and correctional personnel, in concluding that the medical care at the facilities where the decedent was housed was unconstitutional.

7. On February 15, the defense response to the plaintiff's second request was received and on February 18, 2007, a Motion to Compel and for Rule 37 Sanctions was filed.

8. Defendant Stanley Taylor signed the Stipulation of Facts submitted to the Department of Justice and had to be aware of the investigation and the collection

of 26,000 electronically indexed items or pages of evidence at all times since the federal investigation commenced in early 2006.

9. At no time prior to the News Journal publication on December 31, 2006 did the defendants or counsel disclose the existence of the investigation or the contents of the evidence submitted.

10. The evidence submitted to the Department of Justice is probative on the issue and extent of the unconstitutionality of the medical care provided during the defendants' watch.

11. The plaintiff requires this evidence to demonstrate and reinforce the evidence of widespread, systemic, studied, callous neglect of the medical care for which the defendants were statutorily or contractually responsible.

Kenneth W. Richmond, Esq., *pro hac vice* counsel for the plaintiff hereby certifies to the court that each of the foregoing facts are true and correct to the best of his information and belief and makes this certification aware of the penalties attendant to unsworn falsification to federal authorities.

March 26, 2007                                /s/_____
                                                          Kenneth W. Richmond., Esq.
                                                          2019 Walnut Street
                                                          Philadelphia, PA  19103