IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Estate of Louis W. Chance, Jr. by: Amanda Humphreys and Louis Chance, III, Personal Representatives<br>506 W. Summit Avenue<br>Wilmington, Delaware 19804<br><br>        Plaintiff<br><br>        v<br><br>First Correctional Medical-Delaware, LLC. et al.<br><br>        Defendant | Civil Action No. 05-449 (SLR) |

**PLAINTIFF'S RESPONSE BRIEF CONTRA<br>MOTION OF FIRST CORRECTIONAL MEDICAL<br>NIRANJANA SHAH, MD, AND JOSE ARAMBURO, MD<br>FOR SUMMARY JUDGMENT**

**Attorneys for Plaintiff**

Jeffrey K. Bartels, Esquire
Kenneth W. Richmond *pro hac vice*
401 S. Maryland Avenue
Wilmington, DE 19804

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………3

NATURE AND STAGE OF PROCEEDINGS……………………………3

SUMMARY OF ARGUMENT……………………………………………5

## ARGUMENT

### I

THE PLAINTIFF MOVED IN A TIMELY MANNER UNDER THE RULES FOR A MODIFICATION OF THE SCHEDULING ORDER DUE TO THE PUBLIC DISCLOSURE OF A SUBSTANTIAL BODY OF EVIDENCE THAT HAD NOT BEEN PREVIOUSLY DISCLOSED UNDER RULE 26, THEREFORE A MOTION FOR SUMMARY JUDGMENT IS PREMATURE.

### II

THE PLAINTIFF'S REPORT IS THAT OF A HIGHLY CREDENTIALED EXPERT IN CORRECTIONAL MEDICAL CARE WHO REVIEWED SPARSE, UNREADABLE HANDWRITTEN RECORDS WHO CONCLUDED THAT THE ACTIONS AND INACTIONS OF FIRST CORRECTIONAL MEDICAL STAFF FELL WELL BELOW THE ACCEPTED STANDARD OF CARE IN CORRECTIONAL FACILITIES.  THEIR FAILURE TO APPROPRIATELY DIAGNOSE AND TREAT MR. CHANCE'S CRYPTOCOCCAL MENINGITIS LEAD TO HIS DEATH AND CONSITTUTE GROSS NEGLIGENCE AND DELIBERATE INDIFFERENCDE TO A SERIOUS MEDICAL NEED.

CONCLUSION……………………………………………………………..

## TABLE OF AUTHORITIES

**Benjamin Doe v. Abington Friends Sch.,** 2007 U.S. App. LEXIS 5945 (**March 15, 2007**)……………………………………………..7

**Burkhart v. Davies**, Del. Super., 602 A.2d 56, 60 (1991)………………12

**Celotex Corp. v. Catrett,** 477 U.S. at 323. ……………………………..12

**Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 589, 125 L. Ed. 2d 469, 113 S. Ct. 2786. (1993)………………………………12

**Holbrook v. Lykes Bros. S.S. Co.**, 80 F.3d 777, 780 (3d Cir. 1996). …..12

**Kannankeril v. Terminix Int'l,** 128 F.3d 802 (1997)…………………..13

## Other Authorities

Rule 702 Federal Rules of Evidence……………………………………13

FRCP 56……………………………………………………………….6, 8

18 *Del. C. §6853*..……………………………………………………13

CONCLUSION………………………………………………………….13

## NATURE AND STAGE OF THE PROCEEDINGS

This is an action brought pursuant to 42 U.S.C. §1983 alleging that the decedent died due to an unconstitutional denial of medical treatment while he underwent a six month incarceration in the Delaware Department of Correction for a fourth DUI.

On January 25, 2006, the Court entered a scheduling order that provided for the completion of discovery by February 28, 2007.

On December 29, 2006 the United States Department of Justice published findings related to the unconstitutionality of the medical care provided by the Delaware Department of Correction referencing evidence consisting of 26,000 items or documents that were not disclosed or produced by defendants. Following a discussion among counsel, a formal 2nd. Request for Production was served upon moving defendants on January 4, 2007.

On December 29, 2006 defendant Taylor signed what purports to be an agreement relating to necessary improvements in procedure and quality of the medical care after having denied during sworn deposition testimony on November that any investigation of the Department of Correction had taken place.

The evidence referenced includes conclusions of experts in medicine and prison medical care and addresses a period commencing in 2002 through the date of the findings, a period covering the incarceration of the plaintiff's decedent.

The evidence became the subject of two pending motions; the first filed on January 18, 2007 under Rule 16.5 for an extension of the discovery deadlines, and the second, filed on February 15, 2007 to compel after defendants Taylor and Talley objected to the production of the evidence submitted to the Department of Justice.

The Court's Scheduling Order provides for a March 15, 2007 deadline for Summary Judgment Motions.

## SUMMARY OF THE ARGUMENT

THE PLAINTIFF MOVED IN A TIMELY MANNER UNDER THE RULES FOR A MODIFICATION OF THE SCHEDULING ORDER DUE TO THE PUBLIC DISCLOSURE OF A SUBSTANTIAL BODY OF EVIDENCE THAT HAD NOT BEEN PREVIOUSLY DISCLOSED UNDER RULE 26, THEREFORE A MOTION FOR SUMMARY JUDGMENT IS PREMATURE; NOTWITHSTANDING, THE PLAINTIFF HAS EXPERT EVIDENCE FROM WHICH A FACT FINDER CAN REASONABLY CONCLUDE THAT THE MOVING DEFENDANTS WERE RECKLESSLY INDIFFERENT TO A SUBSTANTIAL RISK OF DEATH TO THE PLAINTIFF'S DECEDENT IN A MANNER VIOLATIVE OF AMENDMENT VIII PROSCRIPTIONS

**ARGUMENT I**

The first argument in each of the separate motions is duplicated for obvious reasons. The motions to compel production of both the NCCHC audit, the vast amount of information and expert reports supportive of the plaintiff's claims are still under consideration. On the basis of facts stipulated to by defendant Taylor largely addressing the period under which the defendant First Correctional Medical of Delaware, LLC was his medical vendor, the Department of Justice concluded that,

> "Our investigation revealed that the medical care provided at the facilities falls below the standard of care constitutionally required in the following areas, all of which were also identified by the State as deficient: intake; medication administration and management; nursing sick call; provider sick call; scheduling, tracking, and follow-up on outside consults; monitoring and treatment of communicable diseases; monitoring and

5

> treatment of chronic diseases; medical records documentation; scheduling; infirmary care; continuity of care following hospitalizations; grievances; and patient confidentiality. In addition, we found *that care for patients with acute medical urgencies was also constitutionally inadequate."* (emphasis added). (Appendix pp. 4)

At no time through the present have the defendants Taylor or Talley provided the reports of the medical experts referenced in the Department of Justice investigations as required by Rule 26, or in response to plaintiff's 2nd. Request for Production despite the fact that the findings and supporting evidence covered health care for inmates at least as far back as 2002, and certainly included the period complained of the in instant matter.

The plaintiff's prophetic claim of systemic violations of the Eighth Amendment and the reckless indifference to the violations has, to some still unknown extent, been substantiated by reports of medical experts who were given unrestricted access to staff, files, and medical charts by defendant Taylor who was commissioner for the Department of Correction. Irrespective of the conclusions reached by the United States Department of Justice Civil Rights Division, those of the medical investigators are admissible and the facts upon which those conclusions are based are unquestionably probative in the context of the plaintiff's claims.  Until that evidence is produced, the defendants' motion is premature. Rule 56(f) states that,

> **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by

6

affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. In this connection, the plaintiff submits an affidavit relating to the needed production of the evidence requested in its Rule 16.5 request and in its motions to compel and for sanctions.

In **Benjamin Doe v. Abington Friends Sch.,** 2007 U.S. App. LEXIS 5945 (**March 15, 2007**) the Third Circuit most recently stated the following in a motion under Rule 56,

> "B. Analysis
>
> As any practicing attorney can attest, federal litigation revolves around the generous and wide-ranging discovery provided by the Federal Rules of Civil Procedure…. These mechanisms were made necessary by the revolutionary switch from "fact pleading" to "notice pleading" that was embodied by the modern rules. Stephen N. Subrin, *Fishing Expeditions Allowed: The Historical Background of the 1938 Federal Discovery Rules*, 39 B.C. L. REV. 691, 711 (1998) (quoting CHARLES E. CLARK, HANDBOOK OF THE LAW OF CODE PLEADING 41, 567-72 (2d ed. 1947) ("[Discovery mechanisms] are a necessary supplement to the system of simplified pleading.")); Charles E. Clark, *Fundamental Changes Effected by the New Federal Rules*, 15 TENN. L. REV. 551, 564-68 (1939); Edson R. Sunderland, *The New Federal Rules*, 45 W. VA. L.Q. 5, 10-12, 19-27 (1938). Rather than endless pleadings "served back and forth *ad infinitum* until the last issue of fact was tracked down and identified through the medium of declarations, bills, pleas, replications, rejoinders, surrejoinders, *etc.* " that had characterized common law litigation, *see* Abraham Rotwein, *Pleading and Practice Under the New Federal Rules -- A*

> *Survey and Comparison*, 8 BROOK. L. REV. 188, 195 (1939), modern civil procedure instead "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims,"
>
> As a result, it is well established that a court "is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record.  the Supreme Court has explained that "[a]ny potential problem with . . . premature [summary judgment] motions can be adequately dealt with under Rule 56(**f**)." Therefore, if the non-moving party believes that additional discovery is necessary, the proper course is to file a motion pursuant to Rule 56(f). District courts usually grant properly filed Rule 56(f) motions as a matter of course." This is particularly so when there are discovery requests outstanding or relevant facts are under the control of the moving party. If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion. . And whatever its decision, it is "improper" for a district court to rule on summary judgment without first ruling on a pending Rule 56(f) motion."
>
> (Internal citations omitted)

Two of the plaintiff's discovery motions are pending, together with a Rule 16.5 motion to extend the discovery deadlines, all of which were filed in a timely manner either immediately after the revelations of the United States Department of Justice or after the defendants objected to the production of evidence in response to a timely request.  Nevertheless, in an abundance of caution, the plaintiff has attached an affidavit to satisfy any potential additional requirement posed by rulings on Rule 56(f).

**ARGUMENT  II**

THE PLAINTIFF HAS EXPERT EVIDENCE FROM WHICH A FACT FINDER CAN REASONABLY CONCLUDE THAT THE MOVING DEFENDANTS WERE RECKLESSLY INDIFFERENT TO A SUBSTANTIAL RISK OF DEATH TO THE PLAINTIFF'S DECEDENT IN A MANNER VIOLATIVE OF AMENDMENT VIII PROSCRIPTIONS

**A. First Correctional Medical**

The report of Joseph Goldenson, MD together with his CV is attached hereto. (Appendix pp. 21-25) Plaintiff's decedent expired of Cryptococcal meningitis on September 23, 2003 after first reporting 8 days of headaches to a nurse on September 8, 2003. According to an infectious disease specialist, Dr. Ramesh Vemulappali, MD (formerly under contract with FCM), Cryptococcal meningitis is an opportunistic infection that occurs in patients with AIDS, or acquired immune deficiency syndrome. This form of meningitis is not lethal if treated in time. The testimony of Dr. Vemulappali is that Dr. Tammy Kastries, as CEO of defendant First Correctional, would not authorize the treatment of both AIDS and hepatitis C. (Deposition, Jan. 8, 2007, Appendix pp 26-27).

According to the testimony of defendant, Niranjana Shah, M.D., referencing the rare section of the decedent's chart that she could understand, it appears that, "…[decdedent] was under "chronic care" for hepatitis C, (Dep. p. 62 June 7, Appendix p. 29). Dr. Ramesh Vemulappali also described the dismal outreach process for inmate intake screening (Deposition, Appendix p. 27). The December 29, 2006 published report of the U.S. Department of Justice Civil Rights Division references evidence that leads it to conclude that the Department of Correction Medical Care was constitutionally inadequate in… "monitoring and

9

treatment of communicable diseases; monitoring and treatment of chronic diseases; medical records documentation; scheduling; infirmary care; continuity of care following hospitalizations; grievances…. In addition, [it] found *that care for patients with acute medical urgencies was also constitutionally inadequate.* (emphasis added).

### B. Defendant Aramburo

It is undisputed that on September 12, 2003 a telephone order for the administration of intravenous Ativan, Benadryl and Haldol was obtained from Defendant Abramburo, Jr. without direct examination or the benefit of psychiatric evaluation or intervention during an episode that required a Quick Response Team to subdue the decedent who was obviously experiencing an acute mental breakdown given the lack of prior history.  On September, 13, 2003 defendant Aramburo, without examination or chart review,  prescribed Cafergot, 1/100 PO, BID, PRN headache, times 2 days.  He prescribed Cafergot for *persistent* and possibly migraine headaches. But after this, Dr. Aramburo never had any further contact with the decedent, not for follow up, or for any chart review or consult nor for consideration of decedent's earlier symptoms. (Deposition, June 22, 2006, Appendix pp. 30-31) Curiously, although the QRT squad was called, and the decedent was described as being hostile and "homicidal" on September 12, 2003, he was apparently returned to Web on September 16, 2006 from the Gander Hill infirmary without restraint or discipline of any kind.  Obviously someone concluded that the behavior that led to the QRT response was involuntary.

10

### C. Defendant Shah

Defendant Shah saw the decedent and performed an HEENT on September 16, 2003 because he complained of headache. She diagnosed bilateral headache "episodic". This is after the "episode" on September 12, 2003 in which a social worker described Louis Chance as being "disoriented and unable to contract for his own safety". During her deposition, (Dep. June 7, 2006, p. 66 Appendix p. 32) Dr. Shah testified that she earlier saw the decedent for headache on September 9, 2006, the day after he described 8 days of worsening head pain to a nurse. There are intermittent entries made by unidentifiable staff before September 22, 2006 when an optometrist examining the decedent noted swelling of both eyes (papillidema) and recommended a brain scan for a lesion. On September 22, Dr. Shah called Dr. Ali's pager and left a phone number, but assumed someone else would follow up and make the appointment for the decedent's brain scan. This was *after making an entry in the chart describing an urgent need for an MRI*. (Dep. pg. 79, Appendix p. 34) The next day Louis Chance was found unresponsive, removed to St. Francis where he was pronounced.

Referencing the Department of Justice findings once again, it appears that there is a substantial body of evidence relating to the constitutional inadequacy of medical record keeping, follow-up after hospitalization, infirmary care and *care for patients with acute medical urgencies.*

### The Delaware Medical Malpractice Act

11

18 *Del.C.* §6853 requires that a plaintiff's claim for medical malpractice be supported by expert medical testimony. The statute provides, in relevant part: No liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury . **Burkhart v. Davies**, Del. Super., 602 A.2d 56, 60 (1991). "… the moving party is entitled to summary judgment, as a matter of law, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof." **Celotex Corp. v. Catrett, 477 U.S. at 323.** "Therefore, when the nonmoving party bears the ultimate burden of proof, summary judgment is proper if the moving party can show a failure of proof concerning an element that is essential to the nonmoving party's case." Id. "Consequently, we hold that, in the absence of an applicable statutory exception, when there has been an adequate time for discovery in a medical malpractice action and the record unambiguously reflects that the plaintiff's allegations are not and will not be supported by any expert medical testimony, a defense motion for summary judgment does not require the support of an expert's affidavit." **Wahle v. Medical Center of Delaware, Inc.**, 559 A.2d at 1233-34.

Under the Federal Rules of Evidence, the role of the trial judge is that of a "gatekeeper" to ensure that any and all expert testimony or evidence is not only relevant, but also reliable. **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 589, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). The Rules of Evidence

12

embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact. **Holbrook v. Lykes Bros. S.S. Co.**, 80 F.3d 777, 780 (3d Cir. 1996).

Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility. **Kannankeril v. Terminix Int'l, 128 F.3d 802 (1997).** The Plaintiff's first expert, Dr. Goldenson expressed an unequivocal opinion on the unconstitutional conduct of defendant First Correctional Medical *and its staff*. The only individual physicians who could be identified in the decedent's medical chart had to be identified after the production of his report due to illegibility and the apparent inadvertent later production of a "Mortality Review". The physicians identified as defendants were the only ones who prescribed and treated the decedent's headaches, and these defendants who claim a supervisory role over the physician's assistants and nurses[1].

Based upon the December 29, 2006 published conclusions of the United States Department of Justice, it is indisputable that there remains outstanding a large body of evidence which includes the incriminating reports of medical experts who, unlike Dr. Goldenson, were given *unrestricted* access to the records, procedures, facilities, staff and *identities* when addressing the unconstitutionality of the medical care at the relevant institution(s). This evidence supplements,

---

[1] Defendant Shah was unable to identify signatures in the medical record and defense counsel was unwilling to allow her to attempt identification. (Appendix p. 31)

enhances and reinforces the early conclusion of Dr. Goldenson and is essential for a fair consideration of the merits.

## CONCLUSION

For the foregoing reasons, it is respectfully asserted that the motion for summary judgment by these defendants is immature.

                Respectfully submitted,

              /s/_____
              Jeffrey K. Bartels, Esq.
              Kenneth W. Richmond, Esq. *pro hac*
              401 South Maryland Ave.
              Wilmington, DE. 19804

## CERTIFICATION OF SERVICE

I, Kenneth W. Richmond, Esq., pro hac vice counsel for the Plaintiff, hereby certify that on Thursday, February 11, 2007 a copy of the foregoing Reply to Defendant's Taylor and Talley's Opposition to Rule 16.5 Extension was served by e-mail upon Marc Neidzielski, Esquire, Department of Justice, Carvel State Office Building, 820 N. French Street, Wilmington, DE, 19801, and Daniel L. McKenty 1225 N. King Street, Suite 1100, Wilmington, DE, 19899

Date:   March 26, 2007

              /s/_____
              Kenneth W. Richmond, Esq.
              2019 Walnut Street
              Philadelphia, PA  19103
              215-523-9200
              Pro Hac Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Estate of Louis W. Chance, Jr. by: Amanda Humphreys and Louis Chance, III, Personal Representatives 506 W. Summit Avenue Wilmington, Delaware 19804<br><br>Plaintiff<br><br>v<br><br>First Correctional Medical-Delaware, LLC. et al.<br><br>Defendant | Civil Action No. 05-449 (SLR) |

## PLAINTIFF'S RULE 56(f) AFFIDAVIT

AND NOW, comes the plaintiff whose counsel below submits this affidavit pursuant to FRCP 56(f) in opposition to the motions of defendants for summary judgement and in support thereof avers as follows:

1.  On December 31, 2006, the Wilmington News Journal published a column indicating that on December 29, 2006, the United States Department of Justice had found that the medical care provided to inmates by the Delaware Department of Corrections to be constitutionally inadequate and that Governor Minner and

Stanley Taylor had entered into an agreement with the civil rights division of the Department of Justice to address the medical care issues.

2.  On November 28, 2006, during the deposition of then Commissioner Stanley Taylor, he was asked specifically whether the Department of Correction had an investigation going on, other than the audit conducted by the NCCHC.

pg. 77, line 24

>   Q. All right. What I'm getting at is that apart from the audit that was performed by the NCCHC, the

pg. 78 lines-1-12

>   Department of Correction had an investigation going on; is that correct?
>   A. No.
>   Q. They did not?
>   A. An investigation?
>   Q. Yeah, other than the report?
>   A. An investigation of what?
>   Q. The medical care that was being delivered by FCM?
>   A. No.

3.  On January 3, 2007, before the commencement of the deposition of Defendant Sitta Gombeh-Ali, a telephone status conference was held with Magistrate Judge Mary Pat Thynge at which time the news reports of the Department of Justice findings and the agreement of the Department of Corrections was briefly discussed among counsel.

4.  At the conclusion of the deposition, a discussion was undertaken among counsel addressing the Department of Correction Agreement and the expert

medical reports referenced by the Department of Justice and whether they would be produced voluntarily followed by an offer of the undersigned to produce law on the subject of federal evidential privilege claims.

5. Defense counsel was non-committal and mistakenly indicated that the period covered by the investigation, and the institutions did not relate to the plaintiff's decedent, the institutions he was treated at or the time period. On January 4, 2007 a 2nd Request for Production was generated after e-mailing counsel 3rd Circuit decisions on evidentiary privileges.

6. On January 18, 2007 following an analysis of the Agreement entered into by Stanley Taylor and the Department of Justice, together with references to stipulations and voluntary submissions of an extensive body of evidence upon which the Department of Justice based its findings of unconstitutionality for the medical care, plaintiff requested a Rule 16.5 extension. The findings of the Department of Justice made reference to *expert medical investigators* who had, unlike the plaintiff's expert, *unrestricted access* to the facilities, the medical records, the staff and correctional personnel, in concluding that the medical care at the facilities where the decedent was housed was unconstitutional.

7. On February 15, the defense response to the plaintiff's second request was received and on February 18, 2007, a Motion to Compel and for Rule 37 Sanctions was filed.

8. Defendant Stanley Taylor signed the Stipulation of Facts submitted to the Department of Justice and had to be aware of the investigation and the collection

of 26,000 electronically indexed items or pages of evidence at all times since the federal investigation commenced in early 2006.

9. At no time prior to the News Journal publication on December 31, 2006 did the defendants or counsel disclose the existence of the investigation or the contents of the evidence submitted.

10. The evidence submitted to the Department of Justice is probative on the issue and extent of the unconstitutionality of the medical care provided during the defendants' watch.

11. The plaintiff requires this evidence to demonstrate and reinforce the evidence of widespread, systemic, studied, callous neglect of the medical care for which the defendants were statutorily or contractually responsible.

Kenneth W. Richmond, Esq., *pro hac vice* counsel for the plaintiff hereby certifies to the court that each of the foregoing facts are true and correct to the best of his information and belief and makes this certification aware of the penalties attendant to unsworn falsification to federal authorities.

March 26, 2007                                /s/_____
                                              Kenneth W. Richmond., Esq.
                                              2019 Walnut Street
                                              Philadelphia, PA  19103