IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESTATE OF LOUIS W. CHANCE, JR., by Amanda Humphreys and Louis Chance, III, Personal Representatives, | : : : : |
| Plaintiff, | : : |
| v. | : C.A. No. 05-449-SLR |
| FIRST CORRECTIONAL MEDICAL INC., et al., | : : : : |
| Defendants. | : |

## JOYCE A. TALLEY'S DECLARATION

I, Joyce Talley, do declare the following to be true and correct to the best of my information and belief pursuant to 28 U.S.C. § 1746 under the penalty of perjury:

1.  I started employment with the Delaware Department of Correction in the year 1968. Since July 1996, I have served as Chief of the Bureau of Management Services. There are three Bureaus within the Department of Correction. Each Bureau is administered by a Bureau Chief that reports to the Commissioner who is the Department Head and Cabinet Secretary. There is a Bureau of Prisons headed by a Bureau Chief that all Wardens of the level V institutions (Sussex Correctional Institution, Delaware Correctional Center, Howard R. Young Correctional Institution and the Delores J. Baylor Women's Correctional Institution) report to. There is a Bureau of Community Correction headed by a Bureau Chief that administers Probation and Parole, Violation of

Probation Centers (Sussex Violation of Probation Center and Central Violation of Probation Center), the Work Release Centers (Sussex Work Release Center, Morris Community Correctional Center and the Plummer Community Correctional Center).

2. The Bureau of Management Services provides support to all units within the Department, including: fiscal, payroll, accounts payable, budgeting, purchasing, warehousing, food services, healthcare for the inmates, substance abuse treatment, management information services, facilities maintenance and construction. The Bureau of Management Services is assigned by the Department the administration of the health services contract. The Health Services contract is between the medical vendor and the Department and is procured in accordance with 29 *Del.C.* ch. 69. In the present case, the contract was between the Department and First Correctional Medical – Delaware, LLC. The contract commenced on June 17, 2002 and followed a Department Request for Proposals, the opening and examination of the bid packs by bidders, review of the bid information and visits to facilities where the bidder was providing health care services to inmates. The bids are rated and ranked and a committee negotiates with the bidders and after successful negotiation, a contract is offered.

3. After the contract is signed, the medical vendor will meet with the Medical Review Committee ["MRC"] which has a rotating chairpersonship and membership that is made up of a number of employees of the Department and employees from other Departments of the State of Delaware. MRC meetings are

also attended by representatives of the medical vendor. The purpose of the MRC meeting is for the medical vendor to submit a monthly report which present an overall view of the health care services provided at each Department facility for the prior month. The MRC report is presented in a large spiral bound book that is separated by tabs for each facility. Within each facility tab are a number of reports provided by the medical vendor. Those reports include: staffing matrix, outside consultation data, monthly health services report, and grievances (medical only). (portion of MRC records for September 2003 that were already produced will be attached as an example) Specifics are not generally discussed at the MRC and the thrust of the meeting is to get an overall view of the provision of health services to the inmates, not to review the health provided to any individual inmate. The Department through the MRC measured the vendor's contract compliance against the National Commission on Correctional Healthcare ["NCCHC"] standards as that is the accrediting organization for the Department's health care facilities. I am aware that both Webb and HRYCI were re-accredited in 2003.

4. The claim that the Department attempts to contain medical costs by delaying or denying health services for inmates is not true. The Department and the various vendors do look for ways of increasing the quality and quantity of medical services within the budget. For example, if a number of inmates need to see an outside specialist, the specialist would be brought into the facility to see the inmates. As another example, the Department recognized that it could save money by buying a number of dialysis machines and placing them in the institutions for

the inmates that needed them rather than arranging for inmates to transport outside the facility for dialysis.

5. To the best of my information, all the Department documents for the years 2002, 2003 and 2004 that "relate to the cost of, and allocation of resources for, medical care in the Department facilities..." are found in the budget documents for those years (converted into fiscal years), Request for Proposals, bids and rating documents that have already been offered in discovery. (Defendant Talley's and Taylor's Response to Plaintiff's Request for Production) The Department is an agency of the State of Delaware and all funds must be appropriated or approved by the General Assembly. The budgetary process was described by Stan Taylor in his deposition of November 28, 2006 at pages 24-34.

6. At no time during 2003, was I aware of the plaintiff's decedent Louis W. Chance, Jr. nor did I participate in any decision regarding him or his health care. I have no medical training and do not provide medical care to anyone.

*[signature]*
Joyce A. Talley